## Manning and Others *v.* Gasharie and Others.

DEPOSITIONS.—NOTICE.—A notice served on the 20th of *December*, in *Goshen*, to take depositions in the city of *New York* on the 29th of the same month, is sufficient.

SAME.—OBJECTIONS TO.—An objection to a deposition "that it is not taken in due form of law" is too general.

CROSS-COMPLAINT.—PARTNERSHIP.—Suit upon a promissory note against a number of persons who had united in an association for the purpose of carrying on a co-operative or union store. The note was given for mer-

chandise, and was signed by the managing agent of the association, as such agent. The articles of association provided that the business should be managed by a board of directors, a president, vice-president and a managing agent, and that no goods should be bought or sold on credit. Certain of the defendants, who were stockholders, filed a cross-complaint against the plaintiff and those of the defendants who had held the position of directors, setting up that the goods had been bought on credit, in violation of the articles of association, &c., and asking that if a judgment was recovered, execution might be first directed against the property of the directors.

*Held,* that the facts alleged in the cross-complaint did not constitute any defense to the plaintiff's action.

*Held,* also, that the relation of the defendants was that of partners.

*Held,* also, that while it is within the discretion of the court to determine the ultimate rights of the parties on each side, as between themselves, this should not be done to the detriment of the opposite party, by delaying his judgment.

*Held,* also, that the cross-complaint failed to show any cause of action against the directors.

VERDICT.—INTERROGATORIES.—It is only where the jury return a general verdict that an answer to special interrogatories can be required.

SAME.—By "particular questions of fact," something less than an issue is intended, and the object of the statute is that these special findings, if inconsistent with the general verdict, may control it.

SAME.—Where the questions propounded require the jury to find the evidence, rather than facts, or where they relate to matters having no material bearing upon the rights of the parties, the court may refuse to submit them to the jury.

INSTRUCTIONS.—PRACTICE.—Where either party desires the court to instruct the jury in writing, notice of such desire must be given at or before the close of the evidence.

AGENCY.—A general agency exists where there is a delegation to do all acts connected with a particular business or employment.

SAME.—The acts of a general agent will bind his principal so long as he keeps within the general scope of his authority, though he may act contrary to his private instructions.

SAME.—RATIFICATION.—Where an agent, who is authorized to buy for cash only, buys on credit, the acceptance and use of the goods by the principal will not be a ratification of the act of the agent, unless the fact of the purchase having been made on credit was known to the principal.

APPEAL from the *Elkhart* Common Pleas.

ELLIOTT, J.—*Gasharie* and *Davis*, merchants of the city of *New York*, sued the appellants and others, numbering, in all, one hundred and seven persons, as partners, trading and

doing business under the firm name of the "Farmers' Union Store," at *Elkhart*, in *Elkhart* county, *Indiana*.

The complaint is in three paragraphs, the first of which alleges, in substance, that on the fifth day of *October*, 1860, the plaintiffs were partners, doing business as wholesale merchants in the city, county and State of *New York*, under the firm name and style of *"Gasharie & Davis;"* that at and previous to the date aforesaid, the defendants were president, vice-president, directors and members of a mercantile firm, copartnership, or association, which assumed and acted under the name and style of the "Farmers' Union Store," located in the town of *Elkhart*, in the county of *Elkhart*, and State of *Indiana;* that on said fifth day of *October*, 1860, as well as before and after that date, *Solomon N. Chappell*, a member thereof, was the duly appointed and authorized general managing agent of said copartnership or association, to purchase goods, wares and merchandise, in the city of *New York* and elsewhere, for the use and benefit of said association, and to execute and deliver to the persons or firms from whom such purchases should be made, notes and other proper evidences of such indebtedness, to be signed by him as such agent; that on said fifth day of *October*, 1860, the said *Chappell*, as such agent of said association, executed and delivered to the plaintiffs a promissory note, which reads as follows, viz:

"$1,197 53.                    *New York, Oct.* 5, 1860.

"Six months after date, I, the subscriber, of *Elkhart*, county of *Elkhart*, and State of *Indiana*, promise to pay to the order of *Gasharie & Davis*, eleven hundred and ninety-seven dollars and fifty-three cents, with the current rate of exchange on *New York*, at the Bank of *Elkhart*, at *Elkhart*, *Indiana*. Value received, without any relief whatever from appraisement and stay laws.

"S. N. CHAPPELL, Agent."

It is further averred, that said note was given for goods, wares and merchandise sold and delivered by the plaintiffs

LAW LIBRARY

to the defendants, so trading and doing business in the name of the "Farmers' Union Store;" that it was intended to be, and was, delivered to and received by the plaintiffs as the note of said association, and as binding upon it, and the members thereof, and not as the individual note of said *Chappell;* that said *Chappell,* while acting as the agent of said firm, and in the transaction of the business thereof, was in the habit of executing notes in the same form, which had always been recognized by said association as the notes of said firm, and as binding on the members thereof, and that said firm thereby adopted the signature, *"S. N. Chappell,* agent," as the proper signature of said firm; that the goods for which the note was given were sold on the faith and credit of said partnership, and not on the credit of said *Chappell;* that they were received by said association, and used and sold by it, in the regular course of business; that the note remains due and unpaid; that the current rate of exchange at *Elkhart* on *New York,* when said note became due and payable, was two per cent., &c.

The second paragraph is founded on a note, as follows:

"$366 51.                    *New York, Nov.* 10, 1860.

"Four months after date, value received, we promise to pay to the order of *Gasharie & Davis,* of *New York,* three hundred and sixty-six dollars and fifty-one cents, at the Bank of *Elkhart, Indiana,* with the current rate of exchange on *New York,* waiving the benefit of valuation or appraisement laws.          " S. N. CHAPPELL, Agent."

The averments, in other respects, are substantially the same as in the first paragraph.

The third paragraph is for two thousand dollars, for goods, wares and merchandise sold and delivered by the plaintiffs to the defendants, at their instance and request.

Four of the defendants, viz., *Benjamin F. Kenyon, Milo Smith, Derrick B. McKeon* and *Henry Putenbaugh,* who were

directors of the association, appeared to the action and joined in an answer of the general denial.

*Anthony C. Manning* and twenty-seven others of the defendants, who are denominated stockholders, also appeared and filed a joint answer of three paragraphs.

1. The general denial.

2. Denying that they, or either of them, executed either of the notes mentioned in the first and second paragraphs of the complaint.

3. Payment.

The second paragraph is sworn to by *George W. Shepherd,* one of the defendants.

The same defendants filed a "further answer, by way of cross-complaint, in order to determine their ultimate rights, as between them and the defendants named as directors and agent," in which they admit that on and prior to the 10th day of *November,* 1860, they were members of the association known as the "Farmers' Union Store," of *Elkhart, Indiana,* but allege that said association was organized in 1858, and adopted, as the basis of its organization and the conduct of its business, a constitution and by-laws, or articles of association, (a copy of which is set out in the complaint;) that *Benjamin F. Kenyon* became president, *F. W. Miller* vice-president, and certain persons, who are named, became directors of the association, and so continued until after the 10th of *November,* 1860, and were acting as such at the time of the execution of the notes mentioned in the complaint; that about the time of the organization of said association, *Solomon N. Chappell* became its managing agent, as provided in said articles, and so continued until the 17th day of *September,* 1860, when he resigned said agency; that on the same day, the board of directors of said association, by resolution, authorized said *Chappell,* "as agent in fact of the Farmers' Union Store, to settle all claims against the same, due to *Stone, Starr & Co.,* and other firms and merchants in the city of *New York* and elsewhere, and to execute all

notes and evidences of debt, for and on behalf of said Farmers' Union Store, as their agent, and that his acts should be binding on said association;" that, acting under said resolution, said *Chappell* proceeded to *New York*, and, in the months of *October* and *November*, 1860, purchased of the plaintiffs the two several bills of goods mentioned in the complaint, and in consideration thereof executed and delivered to them the notes here in suit; that he assumed to make said purchases upon the credit of said association, and to bind the members thereof by said notes, whereby, if at all, the said defendants became liable to pay the same; that the articles of association, including the eighth, were in full force at the time said goods were purchased and said notes executed; that said directors and said *Chappell*, their agent, purchased said goods on credit, without the authority or sanction of these defendants, and in violation of said articles of association and of good faith. It concludes with a prayer that judgment be rendered and that execution thereon be first levied upon the property of said directors and agent.

The objects of the association are stated in a preamble to the articles, or constitution, thus:

"The object of this association is the promotion of the interests of the producing class, by relieving them from the payment of the intermediate profit now charged by the retail dealer, upon articles entering largely into the consumption of every family, by purchasing and distributing the same at the lowest point attainable, and by subserving such other interests in the sale of produce as may be found practicable and beneficial. To secure concert of action in furtherance of these objects, we associate and organize ourselves into a body mercantile, and designate the same as the 'Farmers' Union Store,' located in the village of *Elkhart*, *Elkhart* county, *Indiana*, and adopt the following constitution," &c.

Article 1 of the constitution provides that "the officers of the association shall consist of a president, vice-presi-

dent and a board of directors, eight in number, to be elected by ballot at the annual meeting of the association."

"Article 5. The directors shall have the entire control, management and supervision of the business of the association, and of all matters thereunto pertaining; and for the purpose of aiding and assisting them therein, they shall, at the first meeting after their election, and annually thereafter at their stated meeting in *July*, appoint a managing agent, who shall, *ex officio*, be secretary and treasurer of the association."

The seventh article, among other things, requires the managing agent, subject to the control of the board of directors, to "exercise a general supervision of the various interests committed to his charge."

"Article 8. No debt shall be contracted by the association, or by any person in its behalf, and all bills of purchase shall be examined by the president, to see that they are properly receipted.

"Article 12. The goods of the association shall be sold to stockholders at not more than eight per cent. above the cost, in the store, and to all others at not more than sixteen per cent., and in all cases for ready pay only."

The stock of the association was divided into shares of twenty-five dollars each. The constitution was subject to amendment at any regular meeting of the association, with the concurrence of two-thirds of the members then present; one-fourth of the whole number being necessary to constitute a quorum for the transaction of any business.

A demurrer was filed to the cross-complaint by the plaintiffs, and also by the directors, who were made defendants thereto. These demurrers were sustained by the court, to which rulings exceptions were taken. Replication in denial of the third paragraph of the answer. The issues were tried by a jury. Verdict as follows:

"We, the jury, find for the plaintiffs and assess their damages at nineteen hundred and fifty-six dollars and nine-

ty-three cents, against the defendants, as follows: *S. N. Chappell, Benjamin F. Kenyon, Henry Putenbaugh, Derrick McKeon, Milo Smith,* and the other defendants served with process, except *Henry Crampton, Myrom E. Cole, John Heddon* and *James Lowry.*     "BALSER HESS, Foreman."

The jury also returned answers to certain interrogatories propounded to them by the court, at the instance of the "stockholder defendants." Motions for a new trial, and in arrest, and for judgment for the defendants who had joined in the answer denying the execution of the notes, (except those against whom no verdict was found,) were severally interposed and overruled, and judgment was rendered on the verdict. The record before us does not show upon whom process had been served. There was no appearance by *Chappell,* the agent, and no judgment was rendered against him. The judgment was rendered against all the defendants, by name, who appeared to the action, except those against whom the jury did not find a verdict. Twenty-four of the defendants who joined in the answer denying the execution of the notes, and in the cross-complaint, join in the appeal. The four directors and two stockholders, against whom judgment was given, were summoned, and refused to join in the appeal.

The first and second assignments of error relate to the refusal of the court to suppress certain depositions taken on behalf of the plaintiffs. The appellants moved the court to suppress the depositions of *William H. Davis* and *John R. Hopkins,* for the following reasons:

"1. That there was not sufficient time, from the time of the service of the notice to the time of the taking of said depositions.

"2. That said depositions are not taken in due form of law.

"3. That the depositions are not properly certified by the officer taking the same.

The notice was served on the 20th of *December,* 1864, at *Goshen, Indiana,* to take the depositions in the city of *New York* on the 29th of the same month. In view of the

facilities for travel afforded by railroads, between the places named, of which the court will take notice, we think the time allowed was reasonable and sufficient.

The second ground of objection was too general. It did not bring to the attention of the court any specific objection to the depositions, and does not therefore properly raise any question in this court. No objection is urged here to the sufficiency of the officer's certificate.

The next question presented in the case is as to the correctness of the ruling of the court in sustaining the demurrers to the cross-complaint of the appellants. We see no error in these rulings. The facts alleged in the cross-complaint do not constitute a defense to the plaintiffs' action. The defendants were organized as a joint stock company, but, not being incorporated, they constituted a partnership, and though an extensive one, were, in the main, subject to the rules and liabilities governing that relation. *Kenyon* v. *Williams*, 19 Ind. 44.

The entire control, management and supervision of the business of the association were intrusted to the directors and a managing agent, appointed by them, and the cross-complaint admits that the notes in suit were given by *Chappell*, as the agent, for goods purchased by him for the association, by the authority of the directors, and does not controvert the fact alleged in the complaint, that the goods were received and used by the association. But it is insisted that the cross-complaint shows a good ground for relief, in favor of the defendants who united therein, against the directors of the association, and should have been entertained by the court for that purpose, under section 368 of the code. 2 G. & H. 218. That section provides that "judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants, and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side, as between themselves." The latter clause of the

section, which it is claimed is applicable to the cross-complaint, is addressed to the sound discretion of the court, when, by the facts presented, justice requires that the ultimate rights of the parties, on the same side, as between themselves, should be determined. But this should not be done to the detriment of the opposite party. In the case at bar, the plaintiffs should not be delayed in the recovery of their judgment by the litigation between the defendants, or involved in the expense of that litigation. Nor do we think the facts alleged show a valid ground for relief against the directors. The cross-complaint does not show that the complainants therein have sustained any injury by the alleged violation of the articles of association by the directors. After they are compelled to apply their individual means to the payment of the debts of the association, will be the proper time to test the liability of the directors to them for the malconduct complained of.

The relief sought is, that execution on the plaintiffs' judgment shall first be awarded against the directors. The statute provides for such a judgment as between principal and surety, but it is purely a statutory remedy, and applies to that relation alone. Here, the relation of principal and surety does not exist between the defendants, and we know of no authority or precedent justifying the relief prayed, in such a case.

On the trial of the cause, the appellants' counsel presented thirty-five special interrogatories, and requested the court to instruct the jury to find specially in answer thereto. The court submitted seventeen of them as presented; eight others were submitted with slight modifications, and ten were rejected by the court. This action of the court is complained of as erroneous. The statute provides that in all cases, when requested by either party, the court shall instruct the jury, if they render a general verdict, to find specially upon particular questions of fact, to be stated in writing. 2 G. & H., § 336, p. 205. It is only when the

jury return a general verdict, that either party can require a special finding upon particular questions of fact. The jury may return either a general or special verdict. These special findings do not constitute a special verdict, under the statute, but may, to some extent, subserve the same purpose. By "particular questions of fact," something less than an issue presented in the case is intended. The meaning obviously is, that the jury may be required to find specially upon questions of fact pertinent to and involved in the issue, and essential to its support on the one side or the other, and which, therefore, would be impliedly covered by a general verdict. The object of such special finding is, that if, under the law, the particular facts so found are inconsistent with the general verdict, the former shall control the latter. *Morse* v. *Morse*, 25 Ind. 156.

We have carefully examined the interrogatories rejected, and also those modified by the court, and find no error in the action of the court in reference to them, of which the appellants have a right to complain. More of them might have been rejected with great propriety. Some require the jury to find the evidence, rather than the facts. Others relate to questions having no material bearing on the rights of the parties, under the issues in the case. Others present questions of law rather than of fact, or are so compounded of both, that they could only tend to confuse and mislead the jury, and others, again, are but repetitions, in another form of language, of some of those submitted to the jury. A more extended notice of them here could serve no beneficial purpose, and would unnecessarily add to the length of this opinion. We dismiss the subject, with the remark that, in view of the issues in the case, it is difficult to conceive how thirty-five material and distinct questions of fact, pertinent to the issues, could arise in the case. The statute was intended to provide a proper means of securing a fair trial and a proper verdict, and should not be used for the purpose of confounding, confusing or misleading the jury.

It appears by a bill of exceptions, that "about five minutes" before the argument of the case to the jury was closed, the appellants' counsel requested that the charge of the court to the jury should be given in writing; but the court, over the objection of the appellants, gave to the jury a general oral charge upon the law applicable to the case, which the judge afterwards reduced to writing. At the time of making the request, the appellants' attorney filed an affidavit stating that he had been informed by the court, before the commencement of the argument, that the attorney of the plaintiffs had requested the charge of the court to be given in writing; that believing, from the information so communicated to him, that the charge would be in writing, he did not, as he otherwise would have done, request the court to give only written instructions to the jury, and that he was only informed about five minutes before the argument was closed, that the plaintiffs' counsel had withdrawn the request. The fifth clause of section 324 of the code provides, that "when the argument of the cause is concluded, the court shall give general instructions to the jury, which shall be in writing, and numbered and signed by the judge, if required by either party." The statute is silent as to the time when a party shall notify the court that the instructions are required to be in writing. In *Newton et al.* v. *Newton*, 12 Ind. 527, it was held that the request should be made a reasonable time before the close of the argument, so as to enable the judge to reduce the charge to writing. If special instructions are asked by counsel on either side, another provision of the statute requires that they should be reduced to writing and delivered to the court at the close of the evidence. And in *Laselle* v. *Wells*, 17 Ind. 33, it is said: "We know of no reason why the same rule should not govern as to the general instructions of the court," that is, that notice that they are required to be in writing should be given to the court before or at the close of the evidence. This seems to us to be a reasonable rule. It imposes no hardship on the parties or counsel, and is no more than just

to the court.  If the request of the plaintiffs' counsel, and its subsequent withdrawal, misled the appellants' counsel, it was his own fault and not that of the court, from anything apparent in the record.

Errors are also assigned on some of the instructions of the court, one of which is as follows:  If *Chappell* was the general agent of the association when he purchased the goods, and the goods came to the association, and were disposed of by it, then his acts in making said purchases, and in giving the notes, are binding upon the company and all the members thereof."  We think this instruction, when considered with reference to the facts of the case, was not erroneous.  A general agency exists where there is a delegation to do all acts connected with a particular business or employment.  Story on Agency, § 17, p. 18.  A general agent is presumed to be authorized to do all acts connected with and proper in the transaction of the business intrusted to his care.  "Whatever acts are usually done by such class of agents, whatever rights are usually exercised by them, and whatever duties are usually attached to them, all such acts, rights and duties are deemed to be incidents to the authority confided to them, in their particular business, employment or character."  Story on Agency, § 106, p. 94. It is well settled that the acts of a general agent, with reference to the subject of the agency, will bind his principal, although he may have received private instructions narrowing or withdrawing his authority, unless such instructions are known to the party dealing with him.  If the instructions are known, then they become the guide by which to determine the powers and duties of the agent.  The rule is stated in 2 Kent's Com. p. 620, thus:  "The acts of a general agent, or one whom a man puts in his place to transact all his business of a particular kind, will bind his principal so long as he keeps within the general scope of his authority, though he may act contrary to his private instructions, and the rule is necessary to prevent frauds and encourage confidence in dealing."

The court further instructed the jury that, "if *Chappell* was such general agent, it was not material whether he showed to the plaintiffs the written resolution of the board of directors of said store, which has been read in evidence, or not. If *Chappell* had authority, outside of the resolution, to bind the association in the purchase of goods, it does not matter whether the resolution contained the same authority." The resolution of the directors referred to in the instruction was that of *September* 17, 1860, heretofore copied in the statement of the case. From the organization of the company to the date of the resolution, *Chappell* was the managing agent of the association, and as such, under the directors, had the general charge and care of its business, both in the purchase and sale of goods. He was both treasurer and secretary of the association, and had the exclusive custody of its funds. In other words, he was the general agent of the association. At the date of the resolution, he tendered to the directors a resignation of the agency, and it was insisted by the appellants that the resignation was accepted, and that he ceased from that time to act as the general agent of the association, and that the resolution referred to only constituted him a special agent, for a particular purpose, and did not authorize him to purchase the goods or to give the notes in controversy. On the other hand, it was contended by the plaintiffs that the resignation was not accepted, or, at any rate, that *Chappell* continued to act as the general agent of the association, until after the purchase of the goods for which this suit is brought. The instruction of the court is based on the hypothesis that if *Chappel*, at the time he purchased the goods, was, in fact, still the general agent of the association, then, whether he showed the resolution to the plaintiffs or not, at the time of the purchase, was immaterial, as the resolution was not the source from which he derived the power to purchase the goods. If *Chappell* was the general agent of the association, and if the resolution only conferred upon him authority to do a particular act, having no

reference to the purchase of the goods, or the giving of the notes in suit, as the plaintiffs' counsel insist, then it is evident that the resolution did not in any wise affect the question of the authority of *Chappell*, as the general agent, to purchase the goods. We think the court did not err in giving the instruction.

The court also instructed the jury that "if *Chappell* did not have authority from the association to make these purchases, and to give notes binding upon the association, yet if the defendants afterwards ratified his acts, it is the same as if he had had full authority in the first place. And if the defendants voted, at a meeting of the association, that their goods should be sold and the proceeds paid upon the debts of the association, that would amount to a ratification." The last clause of this instruction, as applied to the facts of the case, was erroneous, and might have misled the jury upon the question to which it relates. If the defendants knew that *Chappell* purchased the goods on the credit of the association, and that they had not been paid for, but stood as a debt against the association, and, with a knowledge of these facts, directed the sale of the goods on hand, and the application of the proceeds to the payment of the debts of the association, it would be a recognition of the debt due the plaintiffs, and would amount to a ratification of *Chappell's* act in making the purchase. It was in evidence that, at the time of the meeting at which it was resolved to sell the goods and apply the proceeds to the company's debts, the company was indebted to other persons, to whose debts the proceeds of the goods were, in fact, applied; and if the appellants did not know of the existence of the plaintiffs' debt when they adopted the resolution referred to, a ratification of the act of *Chappell*, in making the purchase, could not be inferred from the adoption of the resolution. But we cannot reverse the judgment for this error, for the reason that the jury found specially that at the time of the purchase of the goods and the execution of the

notes, *Chappell* was the general managing agent of the association, and that he was authorized to purchase the goods on credit and to execute notes therefor; and we think the evidence fully sustains the finding. The question of ratification, therefore, was immaterial, and the defendants were not injured by the error.

The appellants' counsel, at the proper time, presented to the court nineteen special instructions in writing, and requested that they be given to the jury, but the court refused to give the same, or any part thereof, to which the appellants excepted. This is also assigned for error. We have examined the instructions, and are of opinion that the court committed no error in refusing to give them to the jury. Many of them are based upon rules of law applicable to incorporated joint stock companies, but which do not apply to partnerships, or companies organized in the manner of the "Farmers' Union Store," and others are not sustained by authority. Such of them as contain a proper enunciation of the law applicable to the case, were given, in substance, in the general charge of the court. The evidence is before us, and we think it sustains the general verdict of the jury.

The appellants' counsel has labored at considerable length to show that in a partnership, or association organized as the defendants were, the principle of mutual agency does not apply, and that a member of the firm, who is merely a stockholder, cannot, by contract, bind the other members, without their express authority. But that question does not arise in this case, and we need not therefore discuss it. Here, as we have seen, the association elected a board of directors, to whom, with the "managing agent" appointed by them, was intrusted "the entire control, management, and supervision of the business of the association. Thus the directors and managing agent were, by the very terms of the articles of association, in the broadest sense of the term, its general agents, with full power to transact its business

and bind its members by contract. The evidence shows that *Chappell* was intrusted, substantially, with the entire business of the concern. He was secretary and kept the books, and, as treasurer, had the possession and control of the funds. He purchased the goods and paid out the funds of the association, and at the same time had the control and management of the sales. It is true, that one of the articles of the association forbade the purchase of goods on credit, and another required that they should be sold only for ready pay. These were the instructions to the directors and the "managing agent, to whom was committed the business of the association;" but it appears, from the evidence, that, almost from the beginning, these instructions were habitually violated. Goods were frequently purchased by *Chappell*, by the direction and approval of the directors, upon the credit of the association, and notes, similar to those in suit, were given for them, which were subsequently paid by the association. Money was borrowed, from time to time, upon the credit of the association, to enable the directors and agent to carry on its business. A large number of the stockholders, almost habitually, purchased goods of the association on credit, and it appeared in evidence that at the time of the trial of this cause, more than three years after the dissolution of the association, the stockholders were still indebted to it in a sum more than sufficient to pay the plaintiffs' judgment. The goods for which the notes in suit were given were purchased by *Chappell*, by the order of the directors, on the credit of the association, and were shipped to the store at *Elkhart*, where they were received and used by the association. It is also shown by the evidence that when the plaintiffs sold the goods, they knew that *Chappell* had been in the habit of buying goods of other houses on the credit of the association, and that they had been paid for without any question as to his authority to make the purchases. It does not appear that the plaintiffs, at the time of the sale of the goods, had any notice

of the provision in the articles of association prohibiting the purchase of goods on credit.

We think the case was fairly tried, and determined according to its merits. Justice was clearly done, and we cannot disturb the judgment. The verdict was informal, but was sufficiently certain to justify the judgment rendered upon it.

The judgment is affirmed, with two per cent. damages, and costs.

FRAZER, J., having been of counsel, was absent.

*W. A. Woods,* for appellants.

*M. F. Shuey, D. E. Williamson* and *A. Daggy,* for appellees.