KENWORTHY and Others *v.* WILLIAMS and Others.

Nov. Term, 1854.

KENWORTHY
v.
WILLIAMS.

5   375
142   63

5   375
144   192
144   494
145   103
145   657

5   375
166   30

General demurrers being no longer authorized, a special demurrer must prevail, if at all, for the specific cause assigned, and no other.

Under the R. S. 1852, the causes available on special demurrer are limited to six, which are particularly specified.

*Semble,* that a demurrer assigning any other cause than those specified in the statute, might be rejected on motion, or treated by the Court as frivolous.

The R. S. 1852 require that the allegations in a complaint to contest a will, shall set forth *the unsoundness of mind of the testator, the undue execution* of the will, that it was executed under duress, or obtained by fraud, or any other valid objection to the probate thereof. *Held,* that but two causes were assigned on which the validity of the will could be contested—1. The unsoundness of mind of the testator; 2. The undue execution of the will; and that duress and fraud were merely examples under the second head.

It is not the spirit of the new code to encourage verbiage and fruitless technicality in pleadings.

In a proceeding by complaint, under the R. S. 1852, to contest a will, it is sufficient to allege the undue execution of the will in general terms, without alleging whether by fraud, duress or otherwise.

The manner of the undue execution of the will, is, in such cases, matter of evidence.

The naked opinion of one not a subscribing witness to a will, as to the sanity of the testator, is not admissible in evidence.

But if the witness has had any acquaintance with the testator, and has given the materials from which a conclusion may be drawn as to the state of his mind, such as his manner, conversation, &c., at or near the time of the execution of the will, the witness may·be asked what impression the facts stated made upon him, as to the soundness of the testator's mind.

Even as to time there is considerable latitude. If the deceased never was of sound mind, that may be shown, and, also, *the extent of the unsoundness.* So, likewise, if the diseased mental action had intervened at a later period of life.

Where the unsoundness of the testator's mind at or near the time of making the will has been established, the burden of proving soundness or a lucid interval when the will was made, is upon the party seeking to sustain the will.

When the sanity of the testator is in question, evidence is admissible to show the amount, situation, &c., of his property, as circumstances bearing on his mental condition.

In a proceeding under the R. S. 1852 to contest a will, on account of the unsoundness of mind of the testator, the plaintiff need not prove that the testator was not of sufficient disposing memory; the statute only requiring proof of unsoundness of mind.

Where unsoundness of mind is established, the burden of proving a sufficient disposing memory when the will was executed, is upon the defendant.

Where a party requests that the charge to the jury shall be reduced to writing, the Court can not accompany it by verbal explanations.

Nov. Term,
1854.

KENWORTHY
v.
WILLIAMS.

Friday,
December 1.

APPEAL from the *Henry* Court of Common Pleas.

STUART, J.—Proceeding by complaint to contest the will of *Stephen Gregg*, deceased.

The causes assigned against the validity of the will were—

1. That at the time of making the supposed will, *Gregg* was not of sound mind, &c.

2. That at, &c., he was under the improper restraint and influence of the defendants, &c.

3. That the execution of the will was procured by the deceit, &c., of the defendants and others.

4. That the making of the will was procured by the undue influence and improper conduct of certain of the defendants, in that they instigated the testator against the plaintiffs, and thereby fraudulently induced him to make the will contrary to his wishes.

5. Same as the fourth, alleging the undue influence to consist in *Jonas* and *Ruth Pickering* falsely and fraudulently urging upon him that it was wrong to make the will according to his own wishes, but that he should, in that respect, be governed by them.

The complaint further states the death of the testator, the position of the parties as heirs, closing with the proper petition to have the probate of the will revoked.

Demurrers to the second, third, fourth and fifth paragraphs or counts were sustained. This raises the first question for our consideration.

The causes of demurrer assigned separately to each paragraph, are in substance the same, viz.: that the restraint, influence, fraud, &c., charged in these paragraphs respectively, are too vague to inform the defendants what they are called to answer.

General demurrers being no longer authorized, a special demurrer must prevail, if at all, for the specific cause assigned, and no other. Under the revision, the causes available on special demurrer, under our practice, are limited to six, and they are specially pointed out. 2 R. S. 38. It is not very easy to say that the cause of demurrer here assigned can be referred to either of the statutory causes. It is pre-

sumed that a demurrer assigning any other cause than those specified in the statute, might be rejected on motion, or treated by the Court as frivolous.

Regarding, however, the demurrer in this case as intended to come within the fifth statutory cause, viz., "that the complaint does not state facts sufficient to constitute a cause of action," we come to the sufficiency of the several paragraphs demurred to.

On the part of *Kenworthy* it is contended that the complaint expressed in language as definite as the statute requires, is sufficient on demurrer.

The statutory requirement is, that the allegations in a complaint to contest a will, shall set forth the unsoundness of mind of the testator, the undue execution of the will, that it was executed under duress or obtained by fraud, or any other valid objection to the probate thereof. 2 R. S. 318.

As we read this section, there are but two causes assigned on which the validity of a will can be contested.

1. The unsoundness of mind of the testator; 2. The undue execution of the will. Duress and fraud are not to be regarded as additional causes, but as examples under the second head. If a will is executed under duress or obtained by fraud, that is "undue execution." All such objections to its validity are to be classed under that head. So, under the first head, are to be classed every species of mental unsoundness which would render the party incompetent to make a valid will.

It is said that undue influence in procuring a will to be made, must be such as in some degree to destroy the free agency of the testator and constrain him to do what is against his intention, but which he has not the power to refuse. 1 Rich. 80. To what extent and in what manner this undue influence might be exercised, in the ever varying circumstances of each case, would scarcely be susceptible of allegation. If it were necessary to allege all the *minutiæ*, it would be necessary to adduce corresponding proof, in substance, at least. This would open a wide door for all the obsolete learning of variance. It is not

the spirit of the new code to encourage verbiage and fruitless technicality in pleadings. Even under the old system, where the matters constituting the cause of action or defence consisted of a great variety of facts, general pleading was held sufficient. *Shilling* v. *The State*, at the present term.

We are therefore of opinion that to allege the undue execution of the will in general terms, without alleging whether by fraud, duress, or otherwise, is, under the statute, sufficient. The manner of the undue execution is matter of evidence. Nor can such evidence ordinarily surprise the parties who procured and are interested in sustaining the will. The general assignment of unsound mind or undue execution, indicates with sufficient certainty the point to be assailed.

The second, third, fourth and fifth paragraphs are substantially good. The demurrers should therefore have been overruled.

As the case must go back for further adjudication, there are other questions raised in the record which it may be proper to notice.

One is as to the latitude of inquiry and evidence admissible in such cases. It appears that *Kenworthy* asked one of his witnesses the following question. "Please state how *Gregg's* mind was at that time compared with the state of his mind the summer previous?" The question, says the record, was "ruled out by the Court," and the ruling excepted to.

The witness to whom this question was addressed, had known *Gregg* twenty-five or thirty years. He had been testifying in relation to a conversation held with *Gregg* on the 24th of *December*, 1852, four weeks after the will was made. The 24th of *December* is the time referred to in the question; and the comparison which the witness is asked to institute, is between the state of his mind in *December* and the previous summer.

The substance of the further evidence already given by this witness was, that "*Gregg's* conversation in *December* was chiefly his money and property, and who he had willed

it to. He talked about dying, and used profane language, which was usual in him. From all that he saw witness considered that he was not in a sound state of mind at that time." The will was executed *November* 24, 1852. The authorities all hold, that the naked opinion of one not a subscribing witness, is not admissible. But there is this important qualification. If the witness, as in this case, has had long acquaintance with the testator, and has given the materials from which a conclusion may be drawn as to the state of his mind, such as his manner, conversation, &c., at or near the time of the execution of the will, it is not improper to ask the witness what impression the facts stated made upon him as to the soundness of the testator's mind. *Doe* v. *Reagan,* 5 Blackf. 217. Even as to time there is considerable latitude. If the deceased had never been of sound mind, it would be proper to show that fact, and the extent of the unsoundness. So it would be if the diseased mental action had intervened at a later period of life.

With all the facts and the opinion of this witness properly before the jury, it is not readily perceived what the answer to this question could avail. The comparison sought to be elicited between his mental condition in *December* and the summer previous, was immaterial. We think there was no error committed in excluding the question. The unsoundness of *Gregg's* mind at or near the time of making the will being established, the burden of proving soundness or a lucid interval at the time when, &c., would be devolved on those who sought to sustain the will.

In support of the foregoing positions, the following cases are in point. *Clark* v. *The State,* 12 Ohio 483.— *Gibson* v. *Gibson,* 9 Yerger 329.— *Hix* v. *Whittemore,* 4 Metc. 545.— *Clark* v. *Fisher,* 1 Paige 171.—2 Greenl. Ev. s. 689.

*Kenworthy* offered to introduce evidence to show the amount, situation, &c., of the testator's property, as circumstances bearing on his mental condition; but the Court excluded it. This was a proper element to be considered by the jury. The Court erred in its exclusion.

Nov. Term,
1854.

The Court charged the jury, that "the plaintiff must prove the testator was not of sound mind and *sufficient disposing memory* to bequeath his property." This is also erroneous. The statute only requires the party contesting the will to show that the testator was of unsound mind. The "sufficient disposing memory" was a judicial interpolation on the legal duties of the plaintiff. Nay, it was improperly imposing on the plaintiff the burden of proof in a matter of defence, coming, or which should come, from the other side. For if notwithstanding such unsoundness, the testator had a sufficient disposing memory, if the unsoundness consisted of monomania, not impairing his capacity to acquire or dispose of property, it devolved upon the defence to show that fact. The charge of the Court erroneously transposed the duties of the parties, which, together with the vagueness of the words interpolated, was well calculated to becloud and mislead the jury.

The plaintiff requested the charge to the jury to be reduced to writing. A charge was written. But it appears that it was accompanied by verbal explanations. This was error. The charge and every modification of it should be in writing when required. 2 R. S. 110.—*Townsend* v. *Chapin*, 8 Blackf. 228.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*W. Grose*, for the appellants.

*J. T. Elliott* and *J. H. Mellett*, for the appellees.