## TODD ET AL. *v.* FENTON ET AL.

PRACTICE.—*Special Verdict.—Interrogatories to Jury.*—A special verdict of a jury is different from their finding upon particular questions of fact stated in writing.

SAME.—A special verdict is never found by a jury when they return a general verdict.

SAME.—A jury finds specially upon particular questions of fact stated in writing, only when they render a general verdict.

SAME.— *Will.— Contesting Validity of.—Fraud.—Duress.— Insanity.— Undue Influence.— Undue Execution.*—In an action to contest the validity of a will, wherein the complaint alleged unsoundness of mind, undue execution, duress, fraud and undue influence, the defendants asked leave to submit an interrogatory to the jury, asking them whether the testatrix, when she signed the will, had "mind and memory sufficient to understand the ordinary affairs of life, and to act with discretion therein," whether she knew "her children and grandchildren," and whether she had "a general knowledge of the estate of which she was possessed ; but the court refused to submit the same, and substituted interrogatories asking whether the testatrix, when she signed the will, was of sound mind, whether she was then under duress, and whether the will was duly executed or was obtained by fraud, etc.

*Held,* that the interrogatories substituted covered only the general issues embraced in the general verdict, and that the interrogatory propounded by the defendants should have been submitted.

SAME.—*Instructions.—Declarations of Testator.*— The defendants in such action having asked the giving of an instruction to the jury, properly stating the effect to be given by them, in determining the alleged unsoundness of mind, to declarations made by the testatrix at specified times before and after signing the will, and stating, also, that these declarations had no tendency to prove either fraud, duress or undue influence, the court added the words "Unless they were made at the time, and became a part of the *res gestæ*," and then gave the instruction.

*Held,* that the addition was erroneous.

SAME.—*Undue Influence.*—The court also instructed the jury in such case, that, if one or more of the beneficiaries of the will, in the capacity of an agent of the testatrix, by means of such agency or otherwise, exercised "a controlling influence over her conduct, interests and will, prior to and at the date of said will, and that said will excludes the plaintiffs from participating in her estate, when they might otherwise have been subjects of her bounty, then you may find that such will is not her will, but void on account of undue influence."

*Held,* that the instruction was erroneous.

| | |
|---|---|
| 66 | 25 |
| 132 | 535 |
| 66 | 25 |
| 136 | 8 |
| 66 | 25 |
| 142 | 206 |
| 66 | 25 |
| 144 | 489 |
| 145 | 106 |
| 146 | 399 |
| 66 | 25 |
| 152 | 277 |
| 66 | 25 |
| 165 | 361 |

From the Jefferson Circuit Court.

*C. A. Korbly*, for appellants.

*J. W. Gordon*, *R. N. Lamb*, *S. M. Shepard* and *E. R. Wilson*, for appellees.

WORDEN, J.—This was an action by the appellees, against the appellants, to set aside the will of Elizabeth Todd, deceased.

The will had been admitted to probate, and letters testamentary had been issued to the executor named therein.

The grounds of the contest are thus stated in the complaint: "They" (the plaintiffs) "further aver, that said Elizabeth Todd, deceased, at the time she executed said pretended will, was of unsound mind, and wholly incapable of executing a will by reason of unsoundness of mind. Further, that said supposed will was and is invalid, because the same was unduly executed, and that the same was executed by said Elizabeth Todd, deceased, under duress, and was obtained by fraud and undue influence."

The defendants answered by general denial, and the cause was tried by a jury, who found a general verdict for the plaintiffs. Judgment accordingly.

The defendants prepared, and at the proper time asked the court to require the jury to answer, certain interrogatories in case they should find a general verdict, but the court refused to require the jury to answer the same or either of them, and substituted in the place thereof the following, which were answered by the jury, as set out:

"1st.    Was Elizabeth Todd of sound mind, at the date of the execution of the paper writing in contest, namely, on the 19th day of July, 1869?

"Ans.    She was of unsound mind.

"2d.    Was the paper writing duly executed?

"Ans.    It was duly executed.

"3d.    Was Elizabeth Todd under duress, at the time she signed the paper writing?

Todd *et al. v.* Fenton *et al.*

" Ans. She was not.

" 4th. Was said paper writing procured to be made by said Elizabeth Todd, by fraud ?

" Ans. It was.

" 5th. Was said paper writing procured to be made by said Elizabeth Todd, by undue influence ? If so, by whom ?

" Ans. It was ; by Joseph Todd and I. N. Todd."

The grounds, as we have seen, upon which the supposed will was contested, were, as named in the complaint :

1. Unsoundness of mind;
2. Undue execution ;
3. Duress;
4. Fraud ; and,
5. Undue influence.

It will be seen that the interrogatories propounded sought only general answers, responsive to the issues joined on each of the grounds of contest. They were no more particular than if the court had directed the jury to say whether they found for the plaintiffs or the defendants, on each of the several grounds of contest, except the fifth, which directed them, if they should find the undue influence, to say by whom it was exerted. Suppose, that, instead of setting up all the grounds of contest in one paragraph, the complaint had contained as many paragraphs as there were grounds of contest, each setting forth one of the grounds. The interrogatories, except the last portion of the fifth, would be no more particular than a direction to the jury to specify whether they found for the plaintiffs, or for the defendants, on each of the paragraphs. To state the matter a little differently, the effect of the interrogatories was simply to require the jury to specify whether or not each of the several grounds of contest was made out.

Take the first interrogatory as an illustration of the others : " Was Elizabeth Todd of sound mind, at the date of the execution of the paper writing in contest, namely, on the 19th day of July, 1869 ? "

Todd *et al. v.* Fenton *et al.*

An answer to this could be nothing more than to say, that the first ground of contest was, or was not, made out; in other words, an answer to the question could be nothing more than saying that the jury found for the plaintiffs, or for the defendants, as to the first ground of contest. And so of the residue of the interrogatories. This is no more particular than would be a direction to a jury, where there was a complaint containing several paragraphs, to specify in their verdict whether they found for the plaintiffs, or for the defendants, on each of the paragraphs.

The statute provides that " In all actions the jury, unless otherwise directed by the court, may in their discretion render a general or special verdict; but the court shall, at the request of either party, direct them to give a special verdict in writing upon all or any of the issues; and in all cases, when requested by either party, shall instruct them, if they render a general verdict, to find specially upon particular questions of fact to be stated in writing. The special finding is to be recorded with the verdict." 2 R. S. 1876, p. 171, sec. 336.

The next following section of the statute provides, that, " When the special finding of the facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."

A special verdict is not to be confounded with the finding of the jury " upon particular questions of fact to be stated in writing."

Where there is a special, there is no general verdict; and the jury may be required " to find specially upon particular questions of fact," only in cases where they render a general verdict.

It seems clear to us, the parties had a right to propound to the jury, to be answered by them in case they should find a general verdict, questions of fact of a more

particular character than those submitted by the court, which, as has been seen, only sought to elicit from the jury responses as to whether or not each of the grounds of contest was made out. These were general and not particular questions of fact. Each question involved the entire issue upon the particular ground of contest to which it related.

It was held by this court, in the case of *Morse* v. *Morse*, 25 Ind. 156, 161, that the statute " obviously means that a party may require the jury to return a special answer to single questions of fact, pertinent to and involved in the issue, tending to support or defeat it, and which would be impliedly covered by a general verdict. And the office of such special findings is that if, under the law, the particular facts so found are inconsistent with the general verdict, the former shall control the latter."

See, also, *Manning* v. *Gasharie*, 27 Ind. 399, 409, where the same thing is repeated, and it is held that " By ' particular questions of fact' something less than an issue presented in the case is intended."

The interrogatories propounded by the court can not, therefore, be held to have been properly substituted for those which the appellants asked to have propounded to the jury; and the latter, if correct, should have been submitted.

We need not pass upon all the questions which the appellants asked to have propounded, as they asked to have all and each of them submitted, to be answered if the jury should find a general verdict.

The appellants' eighth interrogatory was as follows:

"At the time said Elizabeth Todd signed said will, did she have mind and memory sufficient to understand the ordinary affairs of life, and to act with discretion therein? Did she know her children and grandchildren, and have a general knowledge of the estate of which she was possessed?"

This question, we think, should have been propounded.
It was pertinent to the issue on the question of sanity. It
was sufficiently single.   Did the supposed testatrix have
sufficient mind and memory to understand and know and
act as stated in the question?   It sums up very fairly the
mental capacity necessary to make a will.   It admits of a
direct affirmative or negative answer.   If answered in the
affirmative, it would show sufficient mental capacity to
make a will, and such answer would control the answer
given to the first interrogatory propounded, which we can
not regard as any thing more than a general finding upon
the issue of sanity.

It is objected by the appellees, that the question rested
" on an assumed fact."  We see no assumption in the ques-
tion, except that Elizabeth Todd signed the will.  This the
appellants have the right to assume, because it was fully
conceded that she signed it, in the complaint, in setting
forth the grounds of contest.  Again, it is objected that
the question was directed to matters of evidence, and fell
short of any material fact in the case.   It was directed to
matters of fact concerning which evidence had been given,
and not to matters of evidence; and in our opinion it did
not fall short of any material fact in the case.   If the tes-
tatrix had mind and memory sufficient to understand the
ordinary affairs of life, and to act with discretion therein,
to know her children and grandchildren, and to have a
general knowledge of the estate of which she was pos-
sessed, she had sufficient capacity to make a will.

In *Rush* v. *Megee,* 36 Ind. 69, an instruction was held to
be correct which charged the jury, that, " In legal contem-
plation, one who has sufficient mind to know and understand
the business in which he is engaged, who has sufficient men-
tal capacity to enable him to know the extent of his es-
tate, the persons who would naturally be supposed to be
the objects of his bounty, and who could keep these in his

mind long enough to, and could, form a rational judgment in relation to them, is a person of sound mind." See, also, *Bundy* v. *McKnight*, 48 Ind. 502; *Thompson* v. *Kyner*, 65 Pa. State, 368.

This view in no manner conflicts with the case of *Eggers* v. *Eggers*, 57 Ind. 461, in which it was held that partial insanity incapacitates one to make a will, and that the phrase " unsound mind " includes idiots, *non compotes*, lunatics, distracted persons and monomaniacs. But the case does not decide what degree of mental weakness or aberration will bring a person within either of those categories. The court remarked : " It is often difficult to decide when eccentricity, or a merely capricious imagination, terminates, and when actual mental derangement begins; but when a person has become the victim of a mental derangement, amounting to insanity in any form, we are of the opinion, that, under our statute, he is incompetent to make a will."

We are of opinion that the court erred in refusing to propound the interrogatory to the jury.

We proceed to the consideration of other questions in the cause.

The appellants asked, and the court gave, the following charge :

" No. 35. If you find from the evidence that Elizabeth Todd, the deceased, from five to ten days before the will was made, made statements to John Pattie in respect to Joseph Todd having teased her to make a will, and that she made statements, a week after the will was executed, to the witness, Mrs. Temperly, to the effect that she was very sorry that she had made a will, and that Joseph and Newton Todd had asked or solicited her to make a will, you have a right to consider these statements in deciding upon the soundness of Mrs. Todd's mind at the time she signed the will ; but you can not consider these statements

upon the other issues in the case; they have no tendency whatever to prove fraud, duress or undue influence, or that Joseph or any of said children made such statements." But the court added to the charge the following words: " Unless they were made at the time, and became a part of the *res gestæ.*"

The proposition embodied in the charge as asked is settled law. While the statements made by a testator before, or after, or contemporaneously with, the execution of a will, may be competent as tending to show his mental condition at the time of its execution, statements made by him not contemporaneously with its execution are not competent to prove fraud, undue influence, etc. *Hayes* v. *West*, 37 Ind. 21.

The charge as asked should have been given, and the court clearly erred in adding the appended words. The words added could but lead to confusion and uncertainty, and were of such character as to be likely to mislead the jury.

The time referred to in the words added by the court must have been the time of the execution of the will. The charge as asked had no reference to statements of the testatrix, made at the time of its execution. It specifically and pointedly referred to a time from five to ten days prior to its execution, and to a time a week after its execution.

The effect of the words added was to say to the jury, that, if the statements thus referred to as made so long before and so long after the will was executed were made at the time of its execution, and became therefore a part of the *res gestæ*, they might be considered upon the questions of fraud, undue influence, etc.

The jury might well have inferred from what was added by the court, that, in its opinion, as matter of law, the times specified in the charge might be regarded as the time of the execution of the will, and, therefore, what was

said at those times by the testatrix might be a part of the *res gestæ.*

The court gave the following charge at the instance of the plaintiffs :

" 19.   If you shall believe from the evidence, that one or more of the beneficiaries of the will in contest acted as agents of the testatrix, from the death of her husband to the date of said will and afterward, and that they exercised, by means of such agency or otherwise, a controlling influence over her conduct, interests and will, prior to and at the date of said will , and that said will excludes the plaintiffs from participating in her estate, when they might otherwise have been the subjects of her bounty, then you may find that such will is not her will, but void on account of undue influence."

It may be remarked that the plaintiffs were the grand-children and a great-grandchild of the testatrix, and took nothing under the will, they being the descendants of a daughter of the testatrix, who was dead ; and the property of the testatrix was devised or bequeathed to her surviving children.

We think the charge as given was erroneous.   In it the court said to the jury, that, if the beneficiaries under the will exercised a *controlling* influence over the conduct, interests and will of the testatrix prior to and at the date of the will , and that the will excludes the plaintiffs from participating in her estate when they might otherwise have been the subjects of her bounty, they might find the will void on the ground of undue influence.

It will be seen that, in the charge, the controlling influence hypothesized is in no manner connected with the making of the will.   It is not said that if the will was procured to be made by such influence, or procured to be made as it was made by such influence, it might be held void ; but that if the beneficiaries exercised such influence

over the conduct, interests and will of the testatrix, it might be held void. The word "will," as thus used, was evidently used in the sense of volition, and not in that of a testament. It is not perceived how the controlling influence thus exercised could invalidate the will, unless it was exercised in procuring it to be made, or in procuring it to be made as it was made, even though the plaintiffs might otherwise have been the recipients of bounty of the testatrix. The controlling influence which one person may exercise over another can not destroy the testament of the latter, unless it was exercised in some way in connection with the testament.

But the charge is open to another fatal objection. Mere *controlling* influence is not sufficient to invalidate a will; and it matters not whether the parties exercising the influence stood in the relation of agents to the testatrix or otherwise. The fact of such relationship may, to be sure, be a circumstance to be considered with other matters in determining the extent of the influence exerted, but it is of no further importance.

The phrase "controlling influence" is, in common parlance, of very indefinite signification. If the influence control at all, whether it be in a very great or a very slight degree, it is still a controlling influence. Influence may control in a greater or less degree. In *Rabb* v. *Graham*, 43 Ind. 1, 12, it was said by this court, that "The amount of undue influence which will be sufficient to invalidate a will must, of course, vary with the strength or weakness of the mind of the testator. The influence which would subdue and control a mind naturally weak, or one which had become impaired by age, sickness, disease, intemperance, or any other cause, might have no effect to overcome or mislead one naturally strong and unimpaired. But in every case the influence that will vitiate a will must be such as, in some degree, to destroy the free agency of the

testator and constrain him to do what is against his will, but what he is unable to refuse, or too weak to resist."

The charge did not give to the jury a correct statement of the law as to the extent and character of such undue influence as will vitiate a will.

Some other questions are made, both in regard to other instructions and to evidence; but we think we need not pursue the case further, as the same questions may not arise on another trial of the cause.

For the errors already considered, the judgment below will have to be reversed.

The judgment below is reversed, with costs, and the cause remanded for a new trial.

Opinion filed at November Term, 1878.
Petition for a rehearing overruled at May Term, 1879.