MITCHELL H. WILCOXON *et al.*

*v.*

THOMAS D. WILCOXON.

*Filed at Ottawa November 9, 1896—Rehearing denied March 12, 1897.*

1. APPEALS AND ERRORS—*Supreme Court will not disturb verdict in will contest when evidence is conflicting.* When the evidence given on either side in a suit contesting a will is such that, uncontroverted, it would justify a finding for either party, the Supreme Court will not disturb the verdict of the jury, even though, as an original proposition, it might entertain a different view.

2. WILLS—*mere persuasion, however importunate, does not constitute undue influence.* Mere persuasion or advice concerning the execution of a will or deed will not, however importunate, justify setting aside such will or deed on the ground of undue influence.

3. SAME—*bill to set aside will can be maintained only by an interested party.* A bill to set aside a codicil cannot be maintained when the will to which the codicil is attached, and which is recognized by the bill as valid, disposes of the entire estate to parties other than the complainant, so that he cannot be practically benefited, directly or indirectly, by the success of his suit.

WRIT OF ERROR to the Circuit Court of Stephenson county; the Hon. J. H. CARTWRIGHT, Judge, presiding.

This is a bill by defendant in error, against plaintiffs in error, to set aside a codicil to the last will of Thompson Wilcoxon, deceased, and also to set aside a deed by the said Thompson Wilcoxon and wife conveying certain real property to plaintiffs in error.

Complainant in the bill and the defendants Mitchell H. Wilcoxon, Mary D. M. Proctor and Martha E. Lemon are the only children of Thompson Wilcoxon, deceased, and the defendant Cyende Wilcoxon is his widow. In August, 1852, Thompson Wilcoxon executed his last will and testament, in and by which he gave all his property, real and personal, in law or equity, of which he should die seized, to his wife, Cyende Wilcoxon, without any condition or qualification whatever. On the third day of January, 1881, he executed the codicil sought to be set aside. Upon his death, in December, 1887, the will and codicil were duly admitted to probate in the county court of Stephenson county. On the 20th of June, 1881, the testator and his wife, Cyende, executed and delivered to three children, Mary D. M. Proctor, Mitchell H. Wilcoxon and Martha E. Lemon, a warranty deed to certain real estate, in consideration of a nominal sum and love and affection. That deed was filed for record in the recorder's office of said Stephenson county in January, 1888. Subsequently to the probating of the will the complainant, Thomas D. Wilcoxon, filed this bill, seeking to set aside the codicil and the probate thereof, and also the deed, upon the ground that at the time of their execution Thompson Wilcoxon was of unsound mind and memory, and that he executed said instrument through the undue influence of the defendants. The joint and several answers of the defendants admitted the execution of the several instruments and the probate of the will and codicil, but denied that they were invalid, and denied that at the time of their execution Thompson Wilcoxon was not of disposing mind and memory, and denied that he was in any way influenced by them to execute the same.

An issue was made up on the allegations of the bill, answer and replication, as to whether the writing purporting to be the codicil to the last will and testament of Thompson Wilcoxon, deceased, was the codicil to said will or not, and this issue was tried before a jury, resulting in a verdict finding that it was not such codicil. Motion for new trial being overruled, a decree was entered in accordance with the finding, setting aside said codicil and declaring it of no force and effect. Thereafter the issue as to whether the deed was invalid was tried before the chancellor, he considering all evidence introduced before the jury pertinent to the latter issue, and both parties introducing a large volume of additional evidence. On this hearing a decree was entered declaring the deed null and void, to which finding an exception was entered. This writ of error brings before us the proceeding below upon both of these hearings, and seeks a reversal of both decrees.

J. A. CRAIN, for plaintiffs in error.

WILLIAM BARGE, for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The ground mainly relied upon by plaintiffs in error for reversal is, that the evidence fails to sustain the finding below. On the issue as to the validity of the codicil the defendants introduced the probate thereof and a large volume of documentary evidence, together with the testimony of some forty witnesses, neighbors, associates and acquaintances of Thompson Wilcoxon, extending over a period of many years prior to the execution of the codicil as well as over the years of his life thereafter, which witnesses testified, with more or less directness, that in their opinion Wilcoxon was capable of transacting the ordinary business affairs of life before, at the time and after the execution of the codicil. The documentary evidence consists of letters written by him in person, bearing date

from April, 1879, to perhaps December, 1881. These letters were written to his relatives. Other testimony consisted of certain articles of agreement and papers relating to business transactions, which were perhaps written by others but entered into by him. These contracts also covered a period from April, 1879, to about the time said codicil was executed, and they relate to contracts for the building of houses in the city of Freeport. The complainant introduced a large number of witnesses bearing substantially the same relationship to the testator as did those introduced by the defendants,—that is, neighbors, associates and acquaintances, —who gave it as their opinion that he was not of sound mind and memory. While the evidence of many of these witnesses on either side is of very little importance, either by reason of the limited opportunities they had of forming an opinion or because of the indefiniteness of that opinion, there is such testimony on either side as, uncontroverted, would justify a finding either for or against the complainants, and therefore if this case depended upon the weight of that oral testimony alone, this court, under a long line of well considered cases, would not disturb the finding and decree below, even though we might, as an original proposition, entertain a different view from that reached by the jury. There is, however, in this case, as we think, such evidence of intelligence and business capacity in letters written by the testator and by business transactions shown to have been entered into by him, as to make it clear to our minds that he was capable of transacting the business affairs of life. It is undisputed that before, and for several years, at least, after, the execution of this codicil he continued to transact business with the same intelligence manifested by him in the former periods of his life, and he was recognized, so far as this evidence shows, by business men, contractors, bankers, insurance companies and others with whom he came in contact, as a business man, the same as he had always been. It is

perhaps true that after he moved from Freeport to near Chicago many of his business transactions in Freeport were looked after by his son Thomas; but that was not because of his incapacity to attend to his affairs, but because of his absence.

Some reliance is placed by the complainant's counsel upon the fact that certain of the witnesses spoke of the old gentleman having received a partial stroke of paralysis in the spring of 1879, and an effort is made to date his mental derangement from that time. We have carefully considered all the evidence bearing upon that theory, and while it is true that he was sick at that time, confined to his bed for a short period and lingered about his house, and while it may also be true that that sickness was the result of a partial stroke of paralysis, the evidence is convincing that he so far recovered from its effect as to become remarkably healthy and vigorous for a man of his age, both mentally and physically.

But it is insisted that the evidence shows that the codicil was executed by the over-persuasion of the defendants; that one or more of them procured it to be prepared, and afterwards executed, without the uninfluenced desire and will of the old gentleman. It does appear that some one of the defendants first called upon a relative and attorney at law, Charles H. Mitchell, whose office was in the city of Chicago, and informed him of a desire on the part of the testator to make a codicil to his will like that which is here in controversy, and that Mitchell then gave such party a rough draft of the same; that subsequently the old gentleman, and perhaps his wife and one or more of the other children, went to the office of Mitchell, where the testator signed the codicil, and it was duly witnessed by the said Mitchell and one Jesse B. Barton. We think, when Mitchell's testimony is fully considered, it proves no sort of undue influence, but establishes the fact that Thompson Wilcoxon executed the codicil freely and voluntarily, fully understanding its

scope and purport and giving a rational motive for executing it.   He testifies that at the time it was executed no one was immediately present, and that Wilcoxon explained fully his reasons for making it, which, as appears from the codicil itself, grew out of the fact that a relative, Abigail Wilcoxon, had willed to him and his heirs a considerable estate, and as he might die before she did, or as she might conclude to change her will and give the property to one or more of his children, he desired that an equal distribution among all his children should be made, taking into consideration that estate, whatever it might be.   It has often been decided by this court, as well as others, that mere persuasion or advice, however importunate, will not justify the setting aside of a will. (*Dickie* v. *Carter*, 42 Ill. 376; *Yoe* v. *McCord*, 74 id. 33; *Sturtevant* v. *Sturtevant*, 116 id. 340.)   Here we think the most that can be said, from all the evidence bearing upon that subject, is, that the daughters, Mrs. Proctor and Mrs. Lemon, or one of them, rendered more or less assistance to their father in making this codicil, but there is not, so far as we have been able to find, a particle of evidence to the effect that they ever requested, much less unduly influenced, him to make it; and to hold that the act was not his own voluntary one would be but an inference from what was done, which we think is wholly unjustifiable.

But it is said that the testator, by his own declarations, admitted that he was influenced to make the codicil, and it is true that witnesses testified that in conversation with him about the matter he did express regret at cutting off his son Thomas, and said, in effect, that he was induced to do so by others; but in the same connection, at least with a part of these witnesses, he showed what these influences were which induced him to do it, and clearly expressed the fact that he was induced to do so because of what had been done, or what he feared might be done, by Abigail M. Wilcoxon in the disposition

of her estate. Giving full force and effect to all that class of testimony, we cannot hold that it constitutes undue influence, within the meaning of the law. Our conclusion therefore is, that the verdict of the jury on the issue as to the codicil was unauthorized by the evidence and should have been set aside.

Coming now to the question as to the validity of the deed, there is no evidence in this record that there was any undue influence whatever used by any one to induce the making of that deed. In fact, there is no evidence even tending to show that the defendants, other than the widow, who joined in its execution, knew that it was executed at the time or had anything whatever to do with its execution. The same witness, Charles H. Mitchell, took the acknowledgment to the deed as a notary public, which is in the usual form. He was asked no questions whatever about its execution or the circumstance under which it was made. To sum up the evidence bearing upon this question would be to repeat what we have already said in regard to the execution of the codicil to the will. It seems to us that the evidence as to the grantor's ability to make that deed at the time of its execution is overwhelmingly in favor of its validity, and we are therefore of the opinion that the chancellor erred in his finding and decree upon that branch of the cause.

Independently of what we have said, we are unable to see upon what theory it can be held that the complainant in this bill has any standing whatever in a court of equity. His bill recognizes the validity of the will of 1852. That will, as we have already said, in the most comprehensive and unequivocal terms gives to Cyende Wilcoxon, absolutely and unconditionally, all the property of every description of which the testator should die seized. The codicil only purports to express a further desire in the disposition of his estate if his wife, Cyende, should die before he did, and expressly re-affirms the bequest made in the original will. In other words, the force and effect

of the codicil depended wholly upon the fact as to whether or not the wife should survive him. The bill itself alleges that she did survive him, and she is made a party thereto. How, then, can it be said that the execution of this codicil in any way affected the rights or interests of Thomas D. Wilcoxon, the complainant below? Certainly it interferes in no way with any devise or legacy which he may receive from Abigaïl M. Wilcoxon, because if he receives any such devise or legacy he does so through her will, and independently of any act of his father. If it be said that the codicil obstructs his right to receive an interest in his father's estate, the answer is that that estate is wholly disposed of by the original will vesting it in the widow, Cyende Wilcoxon. So as to the deed. When Thompson Wilcoxon died, that moment, under the provisions of his will, all his real estate, both in law and in equity, vested in his devisee, Cyende Wilcoxon, his wife. If this decree should stand, holding that deed void and of no effect, who is the owner of the land? Certainly not the heirs of Thompson Wilcoxon, because by a will, the validity of which is not questioned, it is given to the widow. It certainly will not be denied that upon affirmance of the decree below vacating and annulling that deed she might instantly convey it to the same children—dispose of it by will; or, if she should die intestate, it would descend to her heirs. In any view, Thomas D. Wilcoxon has no interest whatever in this litigation, and can practically receive no benefit, directly or indirectly, from the decrees below, and for that reason, as well as because they are not supported by the evidence, they will be reversed and the cause remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded.*

Mr. JUSTICE CARTWRIGHT took no part.