## BEAVER ET AL. v. EMRY ET AL.

[No. 12,376.   Filed December 8, 1925.   Rehearing denied February 25, 1926.   Transfer denied May 14, 1926.]

1. WITNESSES.—*In contest of will, parties in interest are incompetent to testify as to matters prior to death of testator, except on the issue of his sanity.*—Under the provisions of §552 Burns 1926, §522 Burns 1914, in an action to contest a will, parties in interest are incompetent to testify as to matters occurring prior to the death of the testator, except as such facts might bear on the issue of soundness or unsoundness of mind of the testator.   p. 583.

2. WILLS.—*Exclusion of testimony in will contest held not reversible error when substantially without probative force on the issue of testator's sanity.*—In an action to contest a will, the exclusion of the testimony of two parties to the action as to their observations of, and relations with, the testator, *held* not reversible error when their testimony was substantially without probative force on the issue of the testator's sanity, that being the only topic on which their testimony was competent.   p. 583.

3. WILLS.—*Relations between testator and a beneficiary raises no presumption of undue influence, and justifies withdrawal of that issue from a will contest.*—In an action to contest a will, evidence of the existence of friendly relations between a beneficiary of the will and the testator and kindly treatment of the latter by the former raises no presumption of undue influence in the execution of the will, and the withdrawal of that issue from the jury was justified.   p. 587.

4. WILLS.—*"Undue influence" which will invalidate a will defined.*—"Undue influence" which will invalidate a will must be directly connected with its execution and must operate at the time it is made; it must be an influence of such compelling force that the testator is but the instrument by which the mastering desire of another is expressed in the will and not that of the testator.   p. 587.

5. TRIAL.—*Argument of cause to the jury is within sound discretion of court, except as regulated by statute.*—Except as regulated by the statute (§588 Burns 1926, §562 Burns 1914), the regulation of the argument of a cause to the jury is within the sound discretion of the court.   p. 587.

6. TRIAL.—*Court's refusal to permit counsel for the plaintiff to make additional argument when argument waived by defense*

*held not abuse of discretion.*—Where plaintiff's counsel made an argument to the jury for an hour and five minutes, covering the law and the facts involved in the case, and the defendants' attorneys waived any argument, it was not error for the trial court to refuse to permit plaintiffs' counsel to make an additional argument, although the court had granted each side four hours for argument, as the question was one for the sound discretion of the trial court.    p. 587.

7.  APPEAL.—*Overruling motion for new trial because of newly-discovered evidence when evidence is not in the record not reversible error.*—When the evidence has not been brought up on appeal, an appellate tribunal cannot hold the overruling of the motion for a new trial because of newly-discovered evidence to be error, since the newly-discovered evidence may have been merely cumulative, which is not sufficient for a new trial. p. 588.

From Boone Circuit Court; *Frank E. Hutchinson,* Judge.

Action by Omer V. Beaver and others against Anna E. Emry and others to contest the will of William H. Beaver, deceased. From a judgment for defendants, the plaintiffs appeal. *Affirmed.* By the court in banc.

*Meade Vestal, Rogers & Smith, Gentry, Cloe & Campbell, Roscoe R. Foland, Christian & Waltz* and *Shirts & Fertig,* for appellants.

*Roberts & Roberts, Thomas E. Kane, Roy Adney* and *Samuel Ashby,* for appellees.

NICHOLS, P. J.—Appellants are half-blood relatives of William H. Beaver, deceased, and, as such, filed this suit against appellees, who are his full-blood relatives, to contest his will. He died on October 28, 1916, at the age of eighty years. He was the youngest of nine children which his father, Henry Beaver, had by his first wife. His father was married a second time and had nine children by his second marriage. He survived all of his full brothers and sisters and all of his half-brothers and half-sisters, and also his wife. He himself never had children, and on July 6, 1915, exe-

cuted his will, by which he willed all of his property in eight equal parts to the children or descendants of his deceased full brothers and sisters, who are appellees in this case. On November 11, 1915, he executed a codicil by which his will was reaffirmed. The will gave all of the estate to relatives of the full-blood, and contest was filed by relatives of the half-blood.

The first trial of this case resulted in a verdict and judgment for appellants, from which an appeal was taken by appellees to the Supreme Court, which resulted in a reversal. See *Emry* v. *Beaver* (1922), 192 Ind. 471, 137 N. E. 55.

Appellees' motion to dismiss the appeal for want of jurisdiction has been heretofore overruled, and we therefore give that question no further consideration.

It appears that the trial commenced on April 14, 1924, and continued until May 2, 1924, during which time, many witnesses were examined, whose testimony, appellants say, cover thousands of pages, beside which, there were checks, notes and such, read in evidence, and yet the brief only undertakes to set out the testimony of three witnesses, the testimony of two of which, Claude Beaver and Marshall Craig, was stricken out. The ruling of the court in striking out the testimony of these two witnesses is one of the errors which, as appellants contend, resulted in a verdict contrary to law. These two witnesses, being parties in interest, were incompetent to testify as to any facts prior to the death of the testator, except as such facts might bear on the issue of soundness or unsoundness of mind of the testator. The testimony of witness Beaver, as it appears in appellants' brief, is as follows: "My name is Claude Beaver, I live on my mother's farm, have a wife and six children; my house is a quarter south and a half east from the house of William H. Beaver. Have lived on that farm all my life; have been

married thirteen years. Visited my uncle Will Beaver when I was a small boy with father and mother and my brothers; visits continued as I grew up and uncle Will visited at our home where I was raised. After I was eighteen years old, I worked for him, helped make hay three seasons in succession. Later I done some tinning on one of his buildings, some patching and soldering; later than that I ran a repair shop, done some work on a buggy for him, some filing and some work like that, plow work. Did not visit his home after I was married, but he has been at our home. I remember he was sick in spring, 1915, did not go to see him then; was sick myself at the time. After he got up, he was at my house and we talked about some fence, 720 rods I helped to put up for him in 1913. I told him he ought not to be out in the weather. It was a damp day. I think he had been to his farm in Fall Creek and he stopped and was talking; said he was some better. He was feeble then and in May and June, 1913, when I built the fence. He would visit and sit on the posts and sleep at times, talk a little bit and go to sleep. Just hold his face you know, and sleep. He told us he had to take medicine along or he could not go out. I was to see him about 15th of August, 1915, he was propped up in bed asleep. I went in and sat down. He wakened up for a short time. I asked him how he was feeling and he said not very good. I didn't bother him a great deal—saw he was very sick. I didn't own any property in 1915. My lungs have bothered me— my bronchial tubes. Don't remember now that I talked to uncle Will Beaver about my condition or that I overheard him say anything about it. He visited our house while I was in this condition."

Cross-examination: "I live with my mother Olive Beaver on the home place in a separate house. She is a widow. I am the son of Marion Beaver. About

twenty years ago when I made hay for Mr. Beaver. The last work I did for him was in 1913, putting up fence in May and June. He came to me in the fall to put up more fence and I was not able to do it. Mr. Rushton showed us where to put up the first fencing. Uncle Will hired me and told me what he wanted me to do. Walter Craig helped do the work. Uncle Will was not very well at the time, he was taking medicine. It was in Spring of 1914 when I was putting some fence around my garden, that I told him he ought not to be out. I think he was traveling in a buggy and probably Jesse Rushton or Billy Rushton was with him. It was in August, 1915, when I went there and he was propped up in bed asleep. He wakened up a few minutes and I asked how he felt. He said not very good. He asked me to bring him a drink of water and went to sleep again. He looked to me to be pretty sick. I knew he was."

Re-examination: "Jesse Rushton signed uncle Will's name to the checks for the fence—fixed them up for him."

The testimony of witness Craig, as it appears in appellant's brief, is as follows: "My name is Marshall Craig, live in Richmond, Indiana. Lived with uncle Will Beaver, with my father and mother, I think in 1877 or 1878. When I was about 7 years old, lived there until my mother died, near '78 I think. Made my home there. When I was about seventeen or eighteen years old, began to work for uncle Will by the month. Worked for him one fall, then was away a year and back the next fall. My mother's name was Joan. She was a half sister of uncle Will. He was not married when father and mother lived there. Mother kept house. Father and uncle Will did the farming. Father left when mother died in '78, if I remember right. Nothing never happened to mar the relations during that

time.   I have three brothers, William H., Amos Newton and James Albert.   William and Newton live in Ohio near Eaton.   Albert lives east of Fishers in Fall Creek township.   I think it was in 1886 when I went to uncle Will's.   Since that time, I visited him quite often while I was single.   I was to see him and aunt Kate when they lived on the hill after they moved back from Noblesville, me and my family.   At that time, I lived on my grandfather Craig's place, about three miles and a half away from him.   He did not visit me down there but I was up to his house more than once.   Did not see him during the last three, four or five years before he died.   I lived in Randolph county."

Cross-examination:   "I have lived in Richmond three years.   Lived at Lynn in Randolph county something like five years.   Previous to that, lived on my grandfather's place in Marion county, about two and one-half miles from the Beaver homestead, but three and one-half miles from where he lived on the hill on the Fishers Station Road.   I can't remember when my father and mother went to live at the Beaver home.   That was when I was small.   I can remember back in 1877 or 1878.   Along there, mother died near 1878.   I was with him during the lifetime of his first wife.   I was there directly after they moved back from Noblesville.   Last saw him at my place about 1908 or 1909.   Did not visit him while I was living in Marion county, two or three miles from his home."

Conceding that these two witnesses might testify to their observations of, and relations with, the testator, without giving their opinions as to his sanity or insanity, we do not see that appellants were harmed by the exclusion of this testimony.   As evidence, within itself, tending in any sense to show that the testator was a person of unsound mind, it was substantially without

probative force, and, without the other evidence before us, we cannot say that it was reversible error to exclude it.

Appellants complaint that the court erred in withdrawing the issue of undue influence from the jury, but there is nothing in the testimony of the one witness whose testimony is in the record from which undue influence might be inferred. It shows nothing but the existence of friendly relations between the witness and the testator, with some assistance, at the testator's request, in the management of his estate. Such kindly treatment of an aged man, within itself, raises no presumption of undue influence. *Stamets* v. *Mitchenor* (1905), 165 Ind. 672, 75 N. E. 579. As was said in *Wiley* v. *Gordon* (1914), 181 Ind. 252, 266, 104 N. E. 500, 505: "Undue influence, in order to make a will void, must be directly connected with its execution and must operate at the time it is made. It must be an influence of such compelling force that the apparent testator is but the instrument by which the mastering desire of another is expressed, so that the supposed will, or the particular part in question, is not the will of the testator except in the sense that he has consented to put his name to it in the form in which it appears."

At the conclusion of the evidence, the court ruled that each side should be limited to four hours in the argument. Thereupon, one of the counsel for appellants began the argument, and continued the same for one hour and five minutes, covering the case. When he had finished, counsel for appellees declined to argue the case. Thereupon, the court refused to permit appellants to make further argument, although they insisted on so doing, and proceeded to instruct the jury. Section 588 Burns 1926, §562 Burns

1914 provides that the party having the burden of the issue shall have the open and close, but that, in opening, he shall present all the points relied on in the case. The record here shows that appellants' counsel covered the case. The matter of the argument of counsel before the jury is within the sound discretion of the court, and appellants having covered the case and closed, we cannot say, in the absence of the evidence, that the court abused its discretion. In this regard, this case is much like *Conrad* v. *Cleveland, etc., R. Co.* (1904), 34 Ind. App. 133, 138, 72 N. E. 489, where the court held that there was no abuse of discretion.

We have carefully examined the instructions given, and those tendered and refused, and we hold that, while there are some unfortunate expressions in some of those given, the jury was not misled thereby, that, so far as we are able to determine from the meager portion of the evidence in the record, the jury was well instructed as to the law controlling the case, and that there was no error in refusing instruction five tendered by appellants. Nothing can be gained by further discussing them. Without the evidence before us, except that of one witness, we cannot say that the court erred in overruling appellants' motion for a new trial on the ground of newly-discovered evidence. Such evidence may have been only cumulative.

We find no reversible error.

Affirmed.

Enloe, J., dissents.