LINDINGER *v.* LINDINGER, JR., ET AL.

[No. 18,690. Filed November 21, 1955. Rehearing denied January 5, 1956. Transfer denied May 3, 1956.]

464

*Theodore M. Gemblerling* and *Crumpacker & Schroer,* of Hammond, for appellant.

*Ryan, Chester & Clifford,* of Valparaiso, and *Martin A. Karr,* of East Chicago, for appellees.

KENDALL, P. J.—Appellees, children of Louis Lindinger, Sr., decedent, brought this action to set aside the probate of the last will and testament of their father on the grounds of duress, fraud, undue execution and undue influence. After filing of appropriate answers, trial was had by jury, resulting in a verdict in favor of appellees setting aside the probate of the will upon which judgment was rendered. All grounds for setting

aside the probate of the will were withdrawn from the jury upon appellant's motion except that of undue influence. The appellant was the second wife of the appellees' father, Louis Lindinger, Sr.

Motion for new trial contended that the verdict was contrary to law, not sustained by sufficient evidence and error of court in overruling appellant's motion for directed verdict. The sole assignment of error is the court's overruling the motion for new trial.

Undue influence has many times been defined by this and the Supreme Court, as well as many text-writers. Generally speaking, undue influence, as applied to a will contest, has reference to the means and methods resorted to and employed by a person for the purpose of effecting and overcoming, and which will ultimately effect and overcome the free and un-restrained will of a testator. Plainly stated, undue influence invalidating a will is that which substitutes the wishes of another for those of the testator. *Workman* v. *Workman* (1943), (Transfer Denied), 113 Ind. App. 245, 46 N. E. 718. See also *Rabb et al.* v. *Graham et al.* (1873), 43 Ind. 1; *Kenworthy* v. *Williams* (1854), 5 Ind. 375.

In order to affect a will, undue influence must sub-jugate the mind of a testator to the wishes of the person exerting the influence. It must be such as to control the mental operations of the testator in the making thereof, overcome his power of re-sistance and oblige him to make a disposition of his property which he would not have made if left freely to act according to his own wishes and pleasures. *Estate of Newhall* (1923), 190 Cal. 709, 214 Pac. 231, 28 A. L. R. 778; *Stevens* v. *Leonard, Ex.* (1900), 154 Ind. 67, 56 N. E. 27.

The sufficiency of the evidence to sustain this verdict depends on the presence in the record of some competent evidence of probative value supporting the same. ■ The exercise of undue influence may be shown not only by positive testimony but by circumstantial evidence surrounding the execution of the will in determining its validity. Evidence required to establish undue influence need not be direct, affirmative or of a positive character such as is required to establish a tangible, physical fact. In the Workman case, *supra,* the court said: "The only positive and affirmative proof required is of facts and circumstances from which the undue influence may be reasonably inferred." *Haas* v. *Haas* (1951), (Transfer Denied), 121 Ind. App. 335, 98 N. E. 2d 232.

Appellant maintains that the record is altogether lacking of any evidence showing undue influence in the execution of the decedent's will.

With these definitions and rules of law in mind, we proceed to consider the evidence to determine whether or not there is any evidence of probative value to sustain appellees' allegation of undue influence.

The decedent married his first wife in 1909. She died in 1943. The first Mrs. Lindinger was survived by the appellees, her children, and her husband, the decedent herein. Appellant's first husband died in ˚Detroit in 1946. In June, 1947, appellant went to Indiana Harbor on a visit during which time she met the decedent whom she first became acqainted with in early childhood. On October 31, 1947, the decedent and the appellant were married. They went to housekeeping at decedent's former home where his son, Louis, Jr., and family also resided. On October 15, 1948, the decedent, sixty years of age and described as being strong and healthy, executed the will in question. He continued to work until

the day of his death on June 2, 1950. The appellant was the recipient of the bulk of his estate and was appointed Executrix of the will.

The evidence revealed that prior to the decedent's second marriage he visited his children quite often; that after his marriage, the visits were not nearly so often, and, on such visits, decedent and his wife did not stay long and that appellant did most of the talking; that appellant was critical of appellees' children, especially Louis, Jr.; that for a short time after marriage, decedent, appellant and Louis, Jr. and his family lived in the same quarters, but within a few weeks Louis, Jr. and family moved upstairs; that while living together, appellant complained of having two cooks in the same kitchen. The evidence revealed that appellant complained that Louis, Jr.'s wife was having a jinx put on her. Appellant likewise complained of the children of Louis, Jr., running around the house and creating confusion; that an altercation occurred between appellant and children of Louis, Jr.; that in November, 1948, appellant told Louis, Jr. that she had cheated him out of Ten Thousand ($10,000.00) Dollars by getting decedent to transfer real estate to her. There was further evidence that the children were deprived of visiting decedent while he was ill in a hospital in Detroit. Evidence further revealed that shortly after marriage appellant told appellee, Helen Lindinger, that she hated the testator and that he was stingy, and further stated that if she didn't get her way she would go to Detroit, which she did, whereupon the decedent went after her.

The witnesses to the will testified that decedent and appellant came to their home; that the decedent informed the witnesses he had made a will and wanted them to witness the same, which they did in one of

the rooms of the witnesses' home; that during the time of the execution and witnessing of the will, the appellant remained in another room of the house looking at the T. V.

With the type of evidence adduced, it is well to consider the same in view of appellant's contention with the definition given of undue influence and requirement for proof thereof by the Supreme Court in the case of *Wiley* v. *Gordon* (1914), 181 Ind. 252, 104 N. E. 500, in which they said:

> "Undue influence, in order to make a will void, *must be directly connected with its execution and must operate at the time it is made.* It must be an influence of *such compelling force* that *the apparent testator is but the instrument by which the mastering desire of another is expressed,* so that the supposed will, or the particular part in question, is not the will of the testator except in the sense that he has consented to put his name to it in the form in which it appears." (Our emphasis).

The latest pronouncement to the same effect of this court is in the recent case of *Ludwick* v. *Banet* (1955), (Transfer Denied), 125 Ind. App. 465, 124 N. E. 2d 214, and cases cited therein.

Unfriendly relationship between appellant and appellees in itself is not evidence of undue influence upon the mind of the testator at the time of the execution of the will; neither is fewer visits and derogatory remarks. Statements of hatred and ill-will are not in themselves and unconnected with the execution of the will, evidence of undue influence in the absence of evidence, or evidence from which inferences can be reasonably drawn, that the mind of the testator was dominated thereby. *Estate of Newhall, supra.* We find no evidence of probative value that the mind of the testator at the time of making the will

was subjugated to and dominated by the desires and designs of appellant to the point of undue influence as defined. In other words, there is no showing of any restraint by the appellant upon the mind of the testator which resulted in making the will as representing the wishes of appellant, the principal beneficiary, rather than the wishes of the testator. Mere general or reasonable influences in themselves over a testator are insufficient to invalidate a will. To have that effect, the influence must be undue.

The substance of the various definitions of undue influence sufficient to void a will is based upon the fact that the influence asserted must be of a kind that so overpowers the mind of the testator as to destroy his free agency and make him express the will of another. *Wiley* v. *Gordon, supra; Beaver* v. *Emry* (1925), (Transfer Denied), 84 Ind. App. 581, 149 N. E. 730. We cannot say that the evidence in this case is of that character. General influences brought to bear on the testamentary act, however strong and controlling, do not in themselves constitute undue influence.

We do not decide whether or not the present will is one that might be termed an unequal or unjust will, but if it were, and the will did make an "unjust" distribution of the testator's estate, that fact does not, when considered alone, raise a presumption of undue influence nor cast the burden of explanation on the favored devisee. *Orth et al.* v. *Orth et al.* (1895), 145 Ind. 184, 44 N. E. 17; *Stevens* v. *Leonard, supra; Bowman et al.* v. *Phillips et al.* (1874), 47 Ind. 341; *Vance et al.* v. *Vance et al.* (1881), 74 Ind. 370; *Wilcoxon* v. *Wilcoxon* (1896), 165 Ill. 454, 46 N. E. 369.

In order to establish undue influence to void a will, the circumstances of its execution need not be incon-

sistent with every hypothesis; however, it is necessary that the evidence of the party attacking the will of a person of sound mind on the grounds of undue influence shall preponderate over the evidence adduced. Actually what the evidence reveals in this case is that the appellant was in a position and had an opportunity to exercise influence over decedent; that the feeling between appellant and appellees was not harmonious; that appellant made statements as to her intentions a number of months prior to the execution of the will. We find no evidence of undue influence or evidence from which inferences can reasonably be drawn that undue influence was exercised on the decedent by the appellant at the time of the execution of the will or that it was influence of such compelling force that the testator was but the instrument expressing the desires of another. *Crane* v. *Hensler* (1925), 196 Ind. 341, 146 N. E. 577; *Wiley* v. *Gordon, supra; Ditton* v. *Hart* (1911), 175 Ind. 181, 93 N. E. 961; *Todd et al.* v. *Fenton et al.* (1879), 66 Ind. 25; *Beaver* v. *Emry, supra.*

Undue influence is determined not in the light of what a court or jury deem just, but in the light of what the testator actually desired. *Will of Schaefer* (1932), 207 Wisc. 404, 241 N. W. 382.

There is an entire absence of evidence in this case to show that when the testator executed the will in question he was under such influence that is undue under the decided cases. *Vance et al.* v. *Vance et al., supra; Rabb et al.* v. *Graham et al., supra; Ditton* v. *Hart, supra.*

The trial court erred in refusing to direct the verdict in appellant's favor. Judgment reversed with instructions to sustain appellant's motion for new trial.

Bowen, J. dissents with opinion.
Crumpacker, J. not participating.

## DISSENTING OPINION

BOWEN, J.—I do not agree with the conclusion reached by the majority opinion in this case. In my opinion, the sufficiency of evidence of probative value in this record to support the verdict of the jury and the judgment in the court below is clearly established by the later decisions of the Supreme Court in *Davis, Exr.* v. *Babb* (1921), 190 Ind. 173, 125 N. E. 403, and of this court in *Cooper* v. *Cooper* (1943), 114 Ind. App. 261, 51 N. E. 2d 100, and *Workman* v. *Workman* (1943), 113 Ind App. 245, 46 N. E. 2d 718. However, while there is language within the earlier decision of *Wiley* v. *Gordon* (1914), 181 Ind. 252, 104 N. E. 500, which would seem to substantiate the majority opinion, there seems to be an unanimity in all the cases to the effect that the ultimate inference of undue influence, or its absence, is one of fact to be drawn by the jury and not to be declared by the court as a matter of law. In my humble opinion the result reached by the majority in effect would tend to create a rule in which courts of appeal would be forced to undertake to determine whether or not undue influence existed from the facts and circumstances in each case, and would therefore be compelled to invade the province of the jury. This court in reviewing *Davis, Exr.* v. *Babb, supra,* in the *Workman* case, *supra,* quoted the following from such decision:

"The sufficiency of the evidence to sustain a verdict on appeal depends solely on the presence in the record of some competent evidence which tends to support that verdict. (Citing authorities.) In determining whether the evidence is sufficient to sustain the verdict of the jury, this court will con-

sider, not only the positive testimony of the witnesses, but also such inferences as flow naturally from established facts. . . . The issue of undue influence joined in this case, like other questions, must be determined from all the facts and circumstances given in the evidence. The ultimate inference of undue influence, or its absence, was one of fact to be drawn by the jury, and not to be declared by the court as a matter of law. The exercise of undue influence may be shown by circumstantial evidence, and the provisions of the will and the circumstances attending its execution may be sufficient to warrant a finding against its validity. *Friedersdorf* v. *Lacy* (1910), 173 Ind. 429, 436, 90 N. E. 766. Such is the nature of the human mind that, when it has been habituated to the influence of another, it will yield to that influence and suffer it to have its effect, although the person in the habit of its exercise may not be present or exert it at the time an act is done. *It may happen that the fruit of an evil and improper influence is born long after the influence is exerted.* . . . In the contest of a will on the ground of undue influence, the evidence required to establish the undue influence need not be of the direct, affirmative and positive character which is required to establish a tangible physical fact. The only positive and affirmative proof required is the facts and circumstances from which the undue influence may be reasonably inferred. *Blackman* v. *Edsall* (1902), 17 Colo. App. 429, 68 Pac. 790. In the case just cited, *Blackman* v. *Edsall, supra,* the court said: 'The chief complaint and contention of the proponent is that the evidence presented and upon which the jury based its verdict sustaining the charge of undue influence was insufficient by reason of its lacking in that affirmative and positive character which is claimed to be necessary. It follows from the very nature of the thing that evidence to show undue influence must be largely in effect circumstantial. It is an intangible thing which only in the rarest instances is susceptible of what may be termed direct or positive proof. The difficulty is also enhanced by the fact universally recognized that he who seeks to use undue influence does so in privacy. He seldom uses

brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to the fact. He observes, too, the same precautions if he seeks by cajolery, flattery or other methods to obtain power and control over the will of another and direct it improperly to the accomplishment of the purpose which he desires.' And again in the same case the court said: 'Only general rules concerning the amount and character of evidence required to establish undue influence in the execution of a will can be laid down. As to what is sufficient must depend upon the facts and circumstances of each particular case.' " (Our emphasis).

An eminent authority, Page on Wills, Vol. 1, §184, has this to say regarding the rules governing the doctrine of undue influence:

"The theory which underlies the doctrine of undue influence is that the testator is induced by various means, to execute an instrument, which, although his, in outward form, is in reality not his will, but the will of another person which is substituted for that of the testator. Such an instrument is, in legal effect, not a will at all. Although executed by the testator, his intention to make a will is so defective that the instrument is invalid."

The same authority in Vol. 2, §811, states:

"From the nature of undue influence, from the fact that it is frequently employed surreptitiously, that it is shown chiefly by its results, and that in any event, the question is usually one of the effect of a long course of conduct upon the mind or the individual in question, the evidence by which undue influence is established is usually circumstantial. Undue influence is essentially a question of fact. The party who contests the will is entitled to the benefit of all inferences of fact which may be deduced, fairly and reasonably from the direct evidence. Direct evidence is necessary only to establish the fact from which undue influence may rea-

sonably be inferred. Although each fact by itself may be insufficient, the facts when taken together may justify, and even require, a finding of undue influence."

Applying the rules from the foregoing decisions of the courts of our state and legal authorities to the evidence in the record before us, in my opinion the question of undue influence was one of fact for the jury to determine, which the jury, aided by proper instructions which were not questioned, did resolve in favor of the appellees.

Much of the evidence in the instant case is similar to the facts and circumstances in the case of *Cooper* v. *Cooper, supra.* The evidence most favorable to the appellees on the question of influence would show that the appellant through threats and pressure caused and procured the decedent to turn property over to her. There is evidence that the appellant, Anna Lindinger, was always nagging Louis Lindinger about the will; that a witness heard a violent argument between appellant and the decedent; that appellant stated in substance that now that she was married to him he should sign everything over to her. A witness testified that appellant threatened to leave decedent to go to Detroit if he did not give her her way. The evidence shows that appellant in talking to a son of the decedent said, "I screwed you, I really screwed you out of $10,000.00. I had Pa sign this house over to me." Another witness testified that she asked the decedent if he would sign over everything to his second wife and that he answered, "No, what I have is my children's." As the majority opinion recites, the appellant went with the decedent to the home of the witnesses who witnessed the will, and that the appellant remained in the house at the time the will was executed.

476 

Considering all of the foregoing evidence with the fact that the evidence in the record shows a completely dominating influence continuously exercised by the appellant who prevented the decedent from entering into normal conversations, and on such occasions he would "shut up like a clam", and that she would take him away from groups when he attempted to engage in conversation, while there may be differences of opinion in the minds of individual jurors or individual judges of courts of appeal as to the strength or weakness of the case made by the appellees, in my opinion there is ample evidence to support the verdict of the jury that the deceased was unduly influenced and dominated by the appellant to the extent that any undue influence previously exerted persisted at the time of the execution of the will, so that but for such influence the will would have been different from that actually executed, and therefore that such undue influence vitiated such will.

In my opinion the judgment of the lower court should be affirmed.

NOTE.—Reported in 130 N. E. 2d 75.