WORKMAN ET AL. *v.* WORKMAN.

[No. 16,812.   Filed February 20, 1943.   Rehearing denied
March 13, 1943.   Transfer denied April 12, 1943.]

248

*Rogers & Waller,* of Washington, *William F. Dudine* and *Herbert W. Lane,* both of Jasper, *Tucker & Tucker,* of Paoli, and *Ralph Lane,* of Detroit, Michigan, for appellants.

*Louis A. Savage* and *Carl M. Gray,* both of Petersburg, *Lutz, Johnson & Lutz,* of Indianapolis, *Henry Heil,* of Orleans, and *Fabius Gwin,* of Shoals, for appellee.

ROYSE, J.—This is an action by appellee to contest an instrument in writing purporting to be the last will of John T. Workman, deceased. The purported will was probated in the Martin Circuit Court on May 19, 1938. The original complaint in this action was filed in the Martin Circuit Court on the 25th day of March, 1939. On March 31, 1939, before any of the appellants ap-

peared in this action, appellee filed the amended complaint on which said action was tried.

Subsequent to the filing of the amended complaint and before the trial, the record discloses the following facts which are important in the consideration of some of the questions presented to this court for determination:

On April 6, 1939, the defendants (appellants) entered their full appearance in said cause. On April 13, 1939, the plaintiff (appellee) moved the court for an order to require the defendant to submit to an oral examination regarding the matters set forth in plaintiff's complaint. This motion was on the same day granted and the examination ordered to be taken on the 2nd day of June, 1939. On August 15, 1939, said court ruled the defendants to answer plaintiff's complaint. On August 16, 1939, the defendants filed their joint and several motion to dismiss the plaintiff's amended complaint. On August 28, 1939, the plaintiff filed his verified motion for a change of venue from Martin County, which motion was sustained by the court on the same day. On August 29th both of the parties appeared in open court, and not being able to agree on a county to which the venue of said cause would be changed, after the plaintiff and defendants had alternately struck, as provided by law, Orange County was left and the venue changed to the Orange Circuit Court. On September 15, 1939, the Clerk of the Martin Circuit Court filed the transcript of said cause in the Circuit Court of Orange County. On September 16, 1939, oral argument was heard by said court on the defendants' motion to dismiss. On September 25, 1939, the plaintiff requested leave of the court to file plaintiff's affidavit verifying plaintiff's amended complaint. On the same day the defendants separately and severally filed their verified written

objections to the plaintiff being granted leave to verify his amended complaint. On October 6, 1939, the Orange Circuit Court overruled the verified objections of defendant to the plaintiff's being granted leave to verify his amended complaint, and the plaintiff was granted leave to file his affidavit verifying said amended complaint and thereupon filed said affidavit. On November 27, 1939, plaintiff offered to file a second verification of his amended complaint. On December 11, 1939, the defendants filed their joint and several written objections to the second verification of plaintiff's amended complaint offered to be filed November 27, 1939, which said objections were sustained by the court. On the same day the court overruled the defendant's motion to dismiss. Thereupon, on the same day, the defendants filed a second motion to dismiss said action and the court overruled said second motion to dismiss. On the same day the defendants then filed their demurrer to a part of said complaint. On February 17, 1940, the court sustained said demurrer to a part of said complaint, and on said day the defendants filed their separate and several answer in general denial to said amended complaint.

Upon the issues thus joined, the cause was submitted to a jury for trial. The jury returned a verdict for appellee, and that the will in suit is not the last will and testament of John T. Workman, deceased. The court rendered judgment on the verdict and ordered that the probation of the will be set aside and held for naught, and for costs. Motion for a new trial was seasonably filed, which motion was overruled by the court and exceptions taken.

The assignment of errors in this court contain five specifications, as follows:

"1. The trial court erred in overruling the motion

of the appellants to dismiss this action, which was filed in the Martin Circuit Court, of Martin County, Indiana, on August 16, 1939.

"2. The trial court on October 6, 1939, erred in overruling appellants'. written objections to the appellee, Ott Workman, verifying by the affidavit of said Ott Workman the amended complaint in this cause.

"3. The trial court on October 6, 1939, erred in permitting the appellee, Ott Workman, over the written objections of the appellants filed in this cause, to verify the amended complaint of the appellee, Ott Workman, in this cause, by the affidavit of said Ott Workman filed for that purpose.

"4. The trial court erred in overruling the motion of the appellants to dismiss this action, which was filed in the Orange Circuit Court, of Orange County, Indiana, on December 11, 1939.

"5. The trial court erred in overruling appellants' motion for a new trial."

In order to reach an understanding of the questions involved in this appeal, we deem it necessary to set out certain of the pleadings.

Bond was filed with the original complaint.

The amended complaint, omitting the formal parts and the part ruled out on demurrer, is as follows:

"The plaintiff for his amended complaint herein, complains of the defendants and says, that the defendant, Ida Workman, Executrix of the Last Will and Testament of John T. Workman, is the duly appointed, qualified and acting executrix of said decedent's Will and that Ida Workman, as an individual, and Norval Sutton are beneficiaries of the Will of the decedent, John T. Workman.

"The plaintiff further complaining says, that he is the son and sole surviving heir-by-blood of John T. Workman, deceased, and that he is 55 years of age.

"The plaintiff further avers that the decedent, John T. Workman, was the husband of the mother of this plaintiff and that there were born to said union three sons, one of whom died at the age of ten, another son Charles,. who died at the age of 45 without leaving any issue by him, and that the first wife and mother of this plaintiff died March 30th, 1932.

"The plaintiff further avers that the deceased John T. Workman died on or about the 16th day of May, 1938, at and in the County of Martin, State of Indiana, and that at the time of his death, he was 76 years of age.

"The plaintiff further avers that the defendant, Ida Workman, was married to the deceased John T. Workman on the ——— day of ———, 193—, and that the defendant, Ida Workman, had been married some two or three times prior to her marriage to the deceased, John T. Workman.

"That the defendant, Ida Workman, is the mother of the defendant, Norval Sutton, who is the sole and only child surviving of the defendant, Ida Workman.

"The plaintiff further avers that the decedent, John T. Workman, had resided practically all of his life in Rutherford Township, Martin County, Indiana, and that the defendant, Ida Workman, was very much younger than the decedent, John T. Workman, being not more than 51 years of age at the time of the happenings hereinafter complained of.

"The plaintiff further complaining says, that the deceased, John T. Workman, had been industrious and frugal and had acquired property of the fair and reasonable value of more than $50,000.00 prior to his marriage to the defendant herein, Ida Workman, and that practically all of said property had been acquired during the time that the deceased, John T. Workman, resided with the mother and this plaintiff during the life of the first wife of John T. Workman and mother of this plaintiff.

"The plaintiff further avers that he is the only heir-at-law of the deceased, John T. Workman, other than the defendant, Ida Workman, who was the second, childless wife of the deceased, John T.

Workman, and owned no interest in his estate other than her statutory allowance of $500.00, one-third of the personal estate and a life estate in one-third of the real estate, and that the plaintiff herein, Ott Workman, would under the law, inherit the remaining two-thirds of the personal property after the payment of the widow's statutory allowance of $500.00 and would inherit the fee simple in all the real estate owned by the decedent at his death, subject only to a life estate in one-third thereof to his surviving widow and childless second wife and that said real estate and personal property that this plaintiff would inherit, under the law, is and was of the value of more than $50,000.00.

"The plaintiff further avers that on the 19th day of May, 1938, a certain writing and written document purported to be the Last Will and Testament of the said John T. Workman, was presented to the Clerk of said Martin Circuit Court as the Last Will of the said John T. Workman and was on said day admitted to probate and was then and there probated as such Will and that thereupon, defendant Ida Workman was duly appointed and commissioned by the Clerk of the Martin Circuit Court as executrix of said pretended Will and attempted to file her bond as such executrix of said Will but that said bond was without security thereon in an amount sufficient to warrant the issuance of the letters testamentary to the defendant, Ida Workman, but that notwithstanding that fact, she entered into the duties of executrix of the Will of the deceased, John T. Workman, and ever since has been and still is acting as such executrix.

"The plaintiff further avers that the defendants, Ida Workman and Norval Sutton, are legatees and devisees under said pretended Will; that said pretended Will purported to dispose of all of the said property, both real and personal, owned by the decedent at the death of said decedent; that all of said property, both real and personal, so owned by said John T. Workman at the time of his death was by said Will given to the defendants, Ida Workman and Norval Sutton, and no portion whatever thereof was given to the plaintiff herein and no mention of his name was made in said Will.

"The plaintiff further avers that said pretended Will is invalid for the following reasons: That said John T. Workman was, at the time of the attempted execution of said pretended Will, of unsound mind and at said time was confined in a hospital in the City of Louisville and had been so confined for some time theretofore; that said John T. Workman at said time and prior thereto and continuously thereafter until his death, was of unsound mind and that, for a long time theretofore and thereafter until his death, was intoxicated continuously and was consuming from three (3) quarts to one (1) gallon of whiskey every 24 hours:

"Second: That the alleged execution of said Will was procured by undue influence exercised over the deceased John T. Workman by the beneficiaries thereof, Ida Workman and Norval Sutton, and by the efforts of the attorney who pretended to represent John T. Workman, Mr. Herbert W. Lane:

"Third: That said Will was unduly executed under duress.

"WHEREFORE, plaintiff sues and asks that said pretended Will may be declared invalid for any purpose whatever and that the probate thereof may be set aside and vacated and the appointment of said Ida Workman as such executrix be held for naught and for all other proper relief.

LOUIS A. SAVAGE,
LUTZ & JOHNSON,
F. GWIN,
Attorneys for Plaintiff.

"STATE OF INDIANA,
                                SS:
MARTIN COUNTY

"Fabius Gwin, being duly sworn, upon his oath says, that he is one of the attorneys for the plaintiff, Ott Workman, in the above entitled cause of action and that he makes this affidavit for and on behalf of the plaintiff, as one of his attorneys.

"Affiant further says that the matters alleged in the above and foregoing amended complaint, are true in substance and in fact, as he is informed and verily believes.

FABIUS GWIN.

"Subscribed and sworn to before me, this 30th day of March, 1939.

_____
                                        Clerk."

The appellants' motion to dismiss, omitting the formal parts, etc., follows: "The defendants in the above entitled cause jointly and also each of said defendants, separately and severally, move the court to dismiss this action for each of the following reasons: 1. No bond has been filed in this cause by the plaintiff or any other person in his behalf, conditioned for the due prosecution of this proceeding and for the payment of all costs therein in case judgment be awarded against the plaintiff. 2. The amended complaint of the plaintiff in this cause is not verified by the plaintiff."

The affidavit which appellee requested the court to permit him to file verifying said amended complaint (which permission was subsequently granted) is as follows:

"State of Indiana
                    SS:
Orange County
                              Orange Circuit Court,
                              August Term, 1939.
"Ott Workman
        vs.
Ida Workman, as Executrix of the
Will of John T. Workman, Deceased,
Ida Workman
Norval Sutton
    "Ott Workman, being duly sworn upon his oath, says that he is the plaintiff in the above entitled cause of action, and that said cause of action is to contest the Will of John T. Workman, deceased.

    "Affiant further says, that the matters alleged in the above and foregoing amended complaint of this cause, are true in substance and in fact, as he is

informed and verily believes and that said cause is brought and prosecuted for the purposes of adjudging and determining the rights of this affiant, as well as the rights of the defendant under said Will and not for vexation or for delay of the settlement of said estate, and further affiant sayeth not.

Ott Workman.

"Subscribed and sworn to before me, a Notary Public of LaPorte County in the State of Indiana, this the 22nd day of August, 1939.

Edgar Wetzel,
Notary Public."

The verified written objections of the appellants to appellee's request for permission to verify his amended complaint, omitting the caption, is as follows:

"The defendants in the above cause, jointly and also each of said defendants separately and severally, object to the plaintiff in this cause now verifying by his affidavit the amended complaint now on file therein, and for the reasons for such objection say:

"That the Will referred to in said amended complaint was offered for probate and was probated on May 19, 1938; That since the said time of the offering of said Will for probate, the plaintiff has not been an infant, or a person who has been absent from the State, or a person of unsound mind; That more than one year has elapsed since said Will was offered for probate, and the plaintiff has not heretofore filed or offered to file any complaint or any amended complaint in this cause that was verified by the affidavit of the plaintiff in this cause; That the defendants on Wednesday, August 16, 1939, filed their motion in this cause to dismiss this action on account of the plaintiff not verifying the amended complaint; And that there is now no right for the plaintiff to verify by his affidavit the amended complaint in this cause.

"Further, the verification of the amended complaint which the plaintiff is now asking leave to file is not verified by the plaintiff except on information and belief, and such affidavit showing that

it is made only on information and belief is not a verification by the plaintiff.

"Wherefore, the defendants, and also each of said defendants, object to the plaintiff now verifying by his affidavit the amended complaint in this cause, and ask that this objection be sustained, and that leave be not granted by the court for the plaintiff now to verify said amended complaint by his affidavit."

Appellants' second motion to dismiss the amended complaint, in addition to the grounds set out in their first motion, was substantially as follows: That more than a year has elapsed since the probation of the Will of John T. Workman, during which time plaintiff did not file or offer to file any complaint or amended complaint verified by affidavit of plaintiff; that plaintiff did not, within one year after the probation of said will, file in the court of jurisdiction in the county where said John T. Workman died or wherein any part of his estate was situated, verified allegations stating that at the time of the execution of the will John T. Workman was of unsound mind, or that the will was unduly executed or that it was executed under duress or by fraud, or any other valid objection to its validity or the probate thereof, and that verification after one year is barred by law; that on August 16, 1939, defendants filed in the Martin Circuit Court their joint and several motion to dismiss this action for the reason that the amended complaint was not verified by plaintiff; that on August 28, 1939, plaintiff filed in the Martin Circuit Court his verified motion for a change of venue which was sustained and the cause venued to the Orange Circuit Court; that plaintiff did not at any time verify or offer to verify said amended complaint in the Martin Circuit Court or in the Orange Circuit Court prior to September 25, 1939; that on September 25, 1939, in the

Orange Circuit Court, plaintiff offered to file his purported verification (hereinabove set out) which was filed on October 6, 1939, over the objection of defendants; that on December 11, 1939, over the objection of defendants, another verification of said amended complaint was filed; that plaintiff, on August 22, 1939, prior to the filing of the motion for change of venue from Martin County, had executed and in his possession said purported verification of the amended complaint which was filed in the Orange Circuit Court, but failed and neglected to file or offer to file same in the Martin Circuit Court or in the Orange Circuit Court, except as hereinbefore alleged; that by reason of the long and unreasonable delay by plaintiff in offering to file any verification of said amended complaint after defendants filed their motion to dismiss on August 16, 1939, this action ought to be dismissed.

Appellants' specifications 1, 2, 3 and 4 in their assignment of errors all relate to the rulings of the Orange Circuit Court before trial on the question of verification of appellee's amended complaint. We understood appellants' counsel to say during the oral argument in this case that the appellants would not press the contention in their brief that the verification of appellee's amended complaint after one year from the probation of the will was barred by the law of this State. However, in their notes on oral argument filed after the argument they continue to urge this proposition.

The verification of a complaint to test the validity of a will is not necessary to give the court jurisdiction, and such verification may be waived. *Sutherland et al.* v. *Hankins et al.* (1877), 56 Ind. 343, 347; *Lange et al.* v. *Dammier et al.* (1889), 119 Ind. 567, 570, 21 N. E. 749; *Faylor* v. *Fehler et al.* (1914), 181 Ind. 441, 104 N. E. 22. Therefore, we hold

that the verification of the amended complaint more than one year after the probation of the will was not barred by law unless there was unreasonable delay on the part of the appellee after the matter had been called to the court's attention by appellants' motion to dismiss, or unless it be made to affirmatively appear that the trial court abused the discretion vested in it by granting appellee leave to file said verification.

Appellants contend with great earnestness that there was long and unreasonable delay and negligence on the part of appellee in offering to file a verification after the motion to dismiss was filed. They assert that the filing by appellee of his motion for a change of venue from the Martin Circuit Court, and his not having offered to file the affidavit verifying said amended complaint for what they term such a long time, constituted such negligent and unreasonable delay on the part of the appellee as to require the trial court to sustain their motion to dismiss. They rely principally on the cases of *Lange* v. *Dammier, supra; Sutherland* v. *Hankins, supra; Prebster et al.* v. *Henderson et al.* (1917), 186 Ind. 21, 113 N. E. 241, 114 N. E. 691, and *Pudney* v. *Burkhart* (1878), 62 Ind. 179.

In the Sutherland case, *supra,* no objections to the failure to verify the complaint had been made to the trial court. In referring to this, the court, at page 357, said: "Now, the appellee Hankins had the right, *on his appearance in this action,* to insist upon the proper verification of appellants' complaint, *before he should be required to answer said complaint.* If this had been done, and the court below had then refused to require the appellants to verify their complaint, another and very different question would have been presented thereby for our consideration, than the one now presented. But said appellee saw fit, as in our opinion he

had the right to do, to waive the verification by the appellants of their complaint, and to join issue and go to trial thereon, without such verification thereof." (Our italics.)

In the Lange case, *supra,* no objection to the failure to verify was made in the trial court except in so far as a motion in arrest of judgment can be considered an objection. In this case the Supreme Court said: "Had an objection been made at the proper time, and in the proper manner, it would have been the duty of the court to have stricken out all averments relating to the execution of the will and the mental condition of the testator, *unless a verification of the paragraph had immediately followed the objection;* but the appellees having joined issue, submitted to a trial, and a verdict having been returned, without any objection having been made, all right to object was waived. (Citing the Sutherland and Pudney cases, *supra*)." (Our italics.)

The Prebster case, *supra,* cites the Sutherland and Lange cases, *supra,* and there the holding is to the same effect.

The record discloses that appellee, for some time prior to the commencement of his action herein and during all the time subsequent thereto, was incarcerated in the Indiana State Prison at Michigan City. The appellants, for reasons best known to themselves, waited more than four months after entering their appearance in the cause, to object to the amended complaint because it was not verified. They did nothing until ordered by the trial court to answer the complaint of appellee. Appellee, in view of this long delay of appellants in raising this question, might quite naturally have assumed it had been waived. In less than two weeks after the motion to

dismiss was filed, appellee filed his motion for a change of venue from Martin County.

The filing of the motion for a change of venue cannot be construed as such a negligent or dilatory act as would bar the right of appellee to verify his amended complaint after the venue had been changed.

The next day after this cause was filed in the Orange Circuit Court that court heard oral arguments on the motion to dismiss. Within a few days after this argument appellee requested the court to grant him permission to file his affidavit verifying the amended complaint. We note that the request of appellee to file his affidavit and the verified written objections of appellant to the granting of such request, were filed the same day. This indicates to us that appellants had some knowledge of the request and the form of affidavit which appellee sought to file.

Appellants insist the word "immediately" used in the above quotation from the Lange case, *supra,* supports their contention that the offer of appellee came too late. We do not agree with this contention. We believe the court intended, by using the word "immediately," to say that when this question was properly presented the defect must, just as soon as reasonably possible, be remedied or the complaint will be dismissed. What is reasonably possible in a particular case is left to the sound discretion of the trial court and the action of the court under such circumstances will not be disturbed by this court unless it is clearly shown the trial court abused such discretion.

Appellants also contend the affidavit of appellee verifying the amended complaint is not sufficient because it is made on information and belief, citing as authority the cases of *Adamson and Another* v. *Wood and Others*

(1840), 5 Blackf. 448-449; *Wallace* v. *State* (1927), 199 Ind. 317, 157 N. E. 657, and some foreign cases. The Adamson case, *supra*, supports appellants' contention. The Wallace case, *supra*, is not in point. It holds that an affidavit for a search warrant must set out in the affidavit the facts upon which affiant relies so that the court may judicially determine whether or not there is probable cause for the issuance of a search warrant. The Adamson case, *supra*, has been overruled. *Curry* v. *Baker, Governor* (1869), 31 Ind. 151, 155, 156; *Bonsell* v. *Bonsell* (1872), 41 Ind. 476; *Honey* v. *Guillaume* (1909), 172 Ind. 552, 88 N. E. 937; *Stillson* v. *State* (1933), 204 Ind. 379, 388, 184 N. E. 260; *State of Indiana* v. *Bingman et al.* (1933), 206 Ind. 486, 190 N. E. 176. The Supreme Court in the Curry case, *supra*, said: "No statement can go beyond the belief of the party making it. That belief may arise from personal observation, from sight or from sound, from information derived from others, or as the result of a logical conclusion from other known facts. But we know that sight or sound may deceive as information derived from other persons may mislead. They can, at most, when united, produce but one result, conviction of the mind, or in other words belief. When, therefore, one states his belief in the truth of a statement, the assertion is as strong as language can make it."

The affidavit in this case was a sufficient verification of the amended complaint. We believe the questions raised by appellants' two motions to dismiss and by their written objections to the filing of the affidavit were matters resting solely within the discretion of the trial court. We do not believe the trial court, in making such rulings, abused its discretion. Therefore its ruling on these questions was not error.

The fifth assignment of error in this court is the

overruling of appellants' motion for a new trial. The motion for a new trial specifies twenty grounds, the first of which is as follows:

"Error of law occurring at the trial in this, that the Court erred in permitting the witness, Ott Workman, while testifying as a witness for the plaintiff on rebuttal, to answer, over the objections of the defendants, the following question asked him on direct examination:

"Q. 'I will ask you if he (Herbert W. Lane)' said this or this in substance, "I have a lot of influence over your father and it might make you money in the long run to employ me?"'

"Prior to said witness answering said question, the defendants objected to the answering of said question and the court overruled defendants' said objection to said question, to which ruling of the court the defendants at the time excepted as follows:

"To which question the defendants object for the following reasons and upon the following grounds: The defendants object for the reason it will not prove or tend to prove any issue in this case. It asks about collateral matters which are not in issue. The plaintiffs are bound by the witness's answer on a collateral matter. It is clearly outside the issues, and is an attempt to impeach on collateral matter not material to issues in this cause.

"Objection overruled. To which ruling of the court the defendants at the time by their attorneys, excepted."

"And said witness after said ruling of the court was permitted to give in evidence his answer to said question, as follows:

"A. 'Yes, sir.'

"Prior to the time the said Ott Workman was asked said question objected to, said Herbert W. Lane, at the trial of this cause, while testifying as a witness for the defendants, had been asked on cross-examination by the plaintiff, the following questions and had given the following answers:

"Q. 'Now I will ask you, Mr. Lane, if about six or eight days later than that, if you didn't go to

the home of Ott Workman in the City of Loogootee, Martin County, Indiana, and have a conversation with Ott Workman at his home?'

"A. 'I did not.'

"Q. 'And I will ask you if at the home of Ott Workman in the Spring of 1937, if you didn't in a conversation with Ott Workman at about seven o'clock in the morning, didn't say this or this in substance to Ott, "I have a lot of influence over your father and it might make you money in the long run to employ me?"'

"A. 'I did not.'

"Q. 'And if in that same conversation if Ott didn't say to you this or this in substance, "Well I don't feel that I need any more lawyers than I have got?"'

"A. 'He did not. But I did have another conversation in Loogootee.'"

The second specification is that the verdict of the jury is not sustained by sufficient evidence, and the third, the verdict of the jury is contrary to law.

A consideration of the first ground of this motion necessarily involves a consideration of the second and third grounds. It will be noted that the first specification of the amended complaint alleges the pretended will was invalid because the decedent was of unsound mind at the time of its pretended execution. The second specification is as follows: "That the alleged execution of said Will was procured by undue influence exercised over the deceased John T. Workman by the beneficiaries thereof, Ida Workman and Norval Sutton, and by the efforts of the attorney who pretended to represent John T. Workman, Mr. Herbert W. Lane." The third specification avers that said will was unduly executed under duress.

If there was no evidence to support the allegation of undue influence, then the admission of the evidence complained of in the first ground of the motion for a

new trial presents a serious question. This makes necessary a consideration of the evidence.

In order to determine whether or not there was any evidence to support the allegation of undue influence, we must first determine what constitutes undue influence, and second, the kind and quantum of evidence necessary to sustain such an allegation.

Undue influence necessarily involves a state of mind. It is a thing that is insubstantial. It may be brought about by either mental or physical coercion, fear, a desire for peace, or a feeling which one is unable to resist. The courts have used different phraseology in defining it, but the theory has been generally the same.

Page on Wills, Vol. 1, § 184, says: "The theory which underlies the doctrine of undue influence is that testator is induced by various means, to execute an instrument which, although his, in outward form, is in reality not his will, but the will of another person which is substituted for that of testator. Such an instrument is, in legal effect, not a will at all. Although executed by testator, his intention to make a will is so defective that the instrument is invalid."

Because undue influence necessarily involves an operation of the mind, usually the evidence to establish it is circumstantial. It is generally resorted to stealthily and with an intent on the part of the person or persons exercising it to conceal their motive and intent. Page on. Wills, Vol. 2, § 811, says: "From the nature of undue influence, from the fact that it is frequently employed surreptitiously, that it is shown chiefly by its results, and that, in any event, the question is usually one of the effect of a long course of conduct upon the mind of the individual in question, the evidence by which undue influence is established is

usually circumstantial. Undue influence is essentially a question of fact. *The party who contests the will is entitled to the benefit of all inferences of fact which may be deduced, fairly and reasonably, from the direct evidence.* Direct evidence is necessary only to establish the facts from which undue influence may reasonably be inferred. Although each fact by itself may be insufficient, the facts when taken together may justify, and even require, a finding of undue influence." (Our italics.)

In the case of *Davis, Executor, et al.* v. *Babb et al.* (1921), 190 Ind. 173, 179, 180, 181, 125 N. E. 403, our Supreme Court, in considering the question of undue influence, said: "The sufficiency of the evidence to sustain a verdict on appeal depends solely on the presence in the record of some competent evidence which tends to support that verdict. (Citing authorities.) In determining whether the evidence is sufficient to sustain the verdict of the jury, this court will consider, not only the positive testimony of the witnesses, but also such inferences as flow naturally from established facts. . . . The issue of undue influence joined in this case, like other questions, must be determined from all the facts and circumstances given in the evidence. The ultimate inference of undue influence, or its absence, was one of fact to be drawn by the jury, and not to be declared by the court as a matter of law. The exercise of undue influence may be shown by circumstantial evidence, and the provisions of the will and the circumstances attending its execution may be sufficient to warrant a finding against its validity. *Friedersdorf* v. *Lacy* (1910), 173 Ind. 429, 436, 90 N. E. 766. Such is the nature of the human mind that, when it has been habituated to the influence of another, it will yield to

that influence and suffer it to have its effect, although the person in the habit of its exercise may not be present or exert it at the time an act is done. It may happen that the fruit of an evil and improper influence is born long·after the influence is exerted. . . . *In the contest of a will on the ground of undue influence, the evidence required to establish the undue influence need not be of that direct, affirmative and positive character which is required to establish a tangible physical fact.* The only positive and affirmative proof required is of facts and circumstances from which the undue influence may be reasonably inferred. *Blackman* v. *Edsall* (1902), 17 Colo. App. 429, 68 Pac. 790. In the case just cited, *Blackman* v. *Edsall, supra,* the court said: 'The chief complaint and contention of the proponent is that the evidence presented and upon which the jury based its verdict sustaining the charge of undue influence was insufficient by reason of its lacking in that affirmative and positive character which is claimed to be necessary. It follows from the very nature of the thing that evidence to show undue influence must be largely in effect circumstantial. It is an intangible thing which only in the rarest instances is susceptible of what may be termed direct or positive proof. The difficulty is also enhanced by the fact universally recognized that he who seeks to use undue influence does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to the fact. He observes, too, the same precautions if he seeks by cajolery, flattery or other methods to obtain power and control over the will of another and direct it improperly to the accomplishment of the purpose which he desires.' And again in the same case the court said: 'Only general rules concerning the amount and char-

acter of evidence required to establish undue influence in the execution of a will can be laid down. `As to what is sufficient must depend upon the facts and circumstances of each particular case.'" (Our italics.)

With these rules in mind we proceed to a consideration of the evidence to determine if there be *any* evidence to sustain the allegation of undue influence in this case.

The record discloses that decedent, John T. Workman, was seventy-six years of age at the time of his death. Herbert W. Lane was a man of thirty-one years of age at the time of the trial. The evidence discloses a most unusual relationship between Herbert W. Lane and the decedent for a period of several years prior to the death of decedent, particularly when consideration is given to the disparity in their ages. Lane was frequently seen in various taverns and saloons with decedent. On one occasion the decedent, while with Lane, within a period of a half hour, drank a pint of whiskey. On this occasion the witnesses who were positive of the quantity of liquor consumed by decedent, could not recall that Lane had taken a drink. Lane was frequently in the company of decedent while decedent was intoxicated. It also appears from the evidence that Lane induced decedent to buy some stock in a distillery, and later this stock was assigned by decedent to Lane without consideration.

The evidence shows that the will in question was written on the 29th day of March, 1938 by Lane, attorney for appellants, in Lane's office, and taken to the hospital, where Mr. Workman was a patient, to have it signed. Lane took with him his uncle and the purported will was signed by Mr. Workman in the presence of two doctors, the nurse, the uncle and Lane. None of the witnesses who were present heard the will read to Mr.

Workman, nor did they see it read to him, and heard no questions asked .Mr. Workman about it. After the will was signed he gave it to Lane to keep; also assigned some stock and notes to Lane without any consideration whatever. The purported will undertook to convey all of the real estate and personal property which Mr. Workman owned to his wife, one of the appellants, during her lifetime, and then to Norval Sutton in fee simple. The nurses in the hospital testified that Lane was in decedent's room in the hospital frequently before the will was executed.

It also appears from the evidence that Lane took decedent on frequent trips. Workman married Ida Workman, appellant, in 1934. From 1934 on, he visited with Lane quite frequently, making trips to Vincennes, Louisville and other places, and in August, 1937, Lane took him on an extended trip throughout the eastern part of the country. After Lane took Mr. Workman on the eastern trip he made deeds conveying all of the real estate he then owned to his second wife. That was in November, 1937. There was no consideration. The transaction took place in Lane's office in Jasper.

On one occasion Lane told the decedent, in the presence of the daughter-in-law of decedent, that he, the decedent, should remember this daughter-in-law in his will.

Lane and the defendant, Ida Workman, took the decedent to the hospital in Louisville. They did not tell appellee, Ott Workman, decedent's son, that his father was in the hospital, though they all lived in the immediate vicinity and he learned it from a neighbor. Lane was observed by several impartial witnesses guiding the hand of the decedent while he was in the hospital when he signed a bill of sale. The appellant, Norval Sutton, told appellee that his father was getting along

fine and would be home and out in a few days, when as a matter of fact he was in a dying condition.

The testimony of one witness as to a statement Lane made to him shortly before the trial could properly have been considered by the jury as an indication that Lane had more than the usual interest of an attorney for his client in this case. This witness, a school teacher, testified that he had borrowed money from the decedent several years before his death, and that at the time of the death he still owed decedent some money; that he was subpoenad as a witness in this case when it was first set on September 17, 1940, and that after he appeared in court in response to that subpoena, suit was instituted against him by Lane for the estate on this note. This witness said that Lane sent for him to come to his office, and that the witness asked Lane if he would help him, the witness, with Lane's friend, the township trustee, to get a school for the coming year, and that Lane replied: "How do you expect me to do anything of that sort when you are going to be a witness against me in this trial?"

Applying the rules hereinbefore set out as to what constitutes undue influence and the kind of evidence which will sustain it, we believe there was sufficient evidence in the record to submit to the jury for its determination the question of whether or not the execution of the will was procured by undue influence as alleged in the amended complaint. Lane was charged in the complaint with being one of those who exercised the undue influence over decedent. It is not necessary that one so charged be a beneficiary under the provisions of the contested will. If this were not true, the inhibition which the law places on undue influence could be easily rendered impotent by the designing beneficiary who sought undue advantage for

himself by simply engaging some unscrupulous person who had the confidence of the testator to overcome the will of such testator in favor of such person. It has been held that a will may be invalidated because of undue influence even when the beneficiary was ignorant of the fact it had been exercised for his benefit. *Barr et al.* v. *Summer et al* (1915), 183 Ind. 402, 107 N. E. 675, 109 N. E. 201; *Johnson et al.* v. *Samuels et al.* (1916), 186 Ind. 56, 114 N. E. 977.

The evidence elicited by the answer to the question objected to by appellants and assigned as Ground 1 of their motion for a new trial was admissible as a fact or circumstance which the jury had a right to consider with the other facts and circumstances in evidence as tending to render a fact in issue more or less probable and to show the interest of Lane and his intention to use his influence over John T. Workman.

We next proceed to consider the evidence introduced supporting the allegation that at the time of the execution of the will John T. Workman was of unsound mind.

Many witnesses testified as to the mental condition of the decedent. Their testimony shows that the decedent had lived in Martin County practically his entire life. Until the time of his last illness he was a strong robust man. After he and his first wife were married they lived together on a farm. Through the years of their married life they acquired and accumulated considerable property, both real and personal. All during decedent's life he used intoxicating liquor but was very infrequently intoxicated. His first wife died in 1932. Almost immediately thereafter his habits changed. Prior to her death he had lived frugally, conserved his property, his farm was well kept, and he had no trouble

while driving an automobile. However, after her death he would become moody and melancholy and drank intoxicating liquor excessively, the evidence showing that he drank more than a half-gallon in a 24-hour period, and would take large drinks of nearly a pint at a time of raw moonshine liquor mixed with ginger. The evidence also discloses that during the time after his wife died he drank from two to four gallons of liquor per week. He would drive his automobile while intoxicated and had several accidents. He took frequent trips and squandered his money recklessly. He married his second wife about two years after the death of his first wife. He would talk indecently in the presence of ladies. On one occasion, without any apparent reason whatever, he deliberately ran his head into and against a fountain in a filling station and broke the fountain off; then when the operator of the filling station attempted to render him first-aid he said the operator had hit him over the head with a stick.

On March 25, 1938, he was taken to the Jewish Hospital at Louisville, Ky., and on the 26th or 27th of March an operation for a cancerous condition of the rectum was performed and it was necessary to administer to him large doses of codine and morphine. The will in dispute was executed on the 29th day of March. In a conversation with his son a few days later he asked the son to get him an attorney so that he could make his will, telling his son that he wanted him to have all of his property except $2,000 which he wanted his second wife to have. He did not recognize old acquaintances who visited him with his son, and told one person who visited him at the hospital to go out there, pointing to a closed wall and insisting there was an opening in it. Several medical experts, basing their opinion on substantially the same facts herein set out, expressed

the opinion decedent was of unsound mind at the time he executed the questioned will.

We are of the opinion the record in this case discloses there was sufficient evidence to submit all of the allegations of the amended complaint to the jury.

The fourth, fifth and sixth causes assigned in appellants' motion for a new trial allege error of the trial court in refusing to give Instructions Nos. 1, 2 and 3 tendered by appellants.

Instruction No. 1 tendered by appellants told the jury there was no evidence showing any undue influence of John T. Workman, and instructed the jury to find for the defendants on this issue. Instruction No. 2, for like reasons, instructed the jury to find for the defendants on the issue of duress. Instruction No. 3 told the jury there was only one question for it to determine: "Was the testator, John T. Workman, at the time of the execution of his Will, now in contest, of unsound mind, etc."

For the reasons hereinabove set out, we are of the opinion that these instructions were properly refused by the court.

The seventh, eighth, ninth, tenth and eleventh causes assigned in appellants' motion for a new trial allege error of the court in refusing to give appellants' tendered Instructions Nos. 17, 19, 20, 22 and 29. Each of the propositions discussed in these tendered instructions were fully and properly covered by other instructions of the court. Therefore, it was not error to refuse these instructions. *New York, Chicago & St. Louis Railroad Company* v. *First Trust and Savings Bank* (1926), 198 Ind. 376, 153 N. E. 761.

The twelfth cause assigned in appellants' motion for a new trial is that the court erred in giving to the jury

appellee's tendered Instruction No. 11. The instruction complained of is as follows: "The Court instructs you that fraud and undue influence are not synonymous terms, although undue influence is in one sense a species of fraud, and, while there are sometimes, perhaps usually, present elements of fraud, undue influence may exist without any positive fraud being shown."

The objection made by appellant to this instruction is that there was no evidence showing or tending to show fraud or undue influence. For the reasons hereinbefore set out, we hold this objection to be without merit.

The thirteenth cause assigned in appellants' motion for a new trial is that the court erred in giving to the jury appellee's tendered Instruction No. 15. This instruction was as follows: "The law recognizes a man's children and their descendants as the natural object of his bounty, and a disinheritance of such children or their descendants without any reason therefor, if shown, becomes part of the evidence which the jury have a right to consider on the question of testamentary capacity."

The objection made to the trial court by appellants to the giving of this instruction was as follows: "That the testator is not required to have any reason for disinheriting a child or children, and may disinherit any child or his children, without any reason therefor, and if there is no evidence of any reason therefor, then the jury has no right to consider the absence of any evidence of such reason as any evidence that the testator was of unsound mind at the time of the execution of his will."

The question of the propriety of such an instruction has been considered by our Supreme Court on several occasions. In the case of *Crawfordsville Trust Co.,*

*Executor,* v. *Ramsey et al.* (1912), 178 Ind. 258, 98 N. E. 177, the Supreme Court approved a similar instruction. In the case of *Conway* v. *Vizzard et al.* (1890), 122 Ind. 266, 270, 23 N. E. 771, the Supreme Court said: "It has often been held by this court, and, indeed, the principle is elementary, that where a testator makes a will, which is unnatural in its provisions, such unnatural provisions may be considered in connection with the other evidence in the cause as bearing on the question of the insanity of the testator at the time of the execution of the will."

An almost identical instruction to the one here under consideration was approved in the case of *Bradley et al.* v. *Onstott et al.* (1914), 180 Ind. 687, 103 N. E. 798.

Appellants rely strongly on the case of *Breadheft* v. *Cleveland et al.* (1915), 184 Ind. 130, 135, 142, 143, 110 N. E. 662, where, in a divided opinion, two judges dissenting on this question, the giving of a similar instruction was held error. In this case the Supreme Court, in referring to the questioned instruction, said: "The evidence shows that the testatrix, when the will was made, had a son and some grandchildren; that theretofore the son had failed financially and had filed a petition in voluntary bankruptcy; there was evidence from which the jury might have found that appellant nursed and cared for testatrix and looked after her wants and that her comfort depended on the services of appellant. Whether under such evidence, the son was the 'natural object of her bounty,' was a question of fact for the jury's determination, and the court erred in telling the jury that the law would recognize appellee as such object." In the original opinion the case of *Bradley et al.* v. *Onstott et al., supra,* was not referred to, but on petition for rehearing the court said: "Our attention is called to the case of *Bradley et al.* v. *Onstott et al.* (1914), 180 Ind. 687, 103

N. E. .798, where the trial court gave an instruction quite similar to the one here involved. Appellee's counsel do not claim that there is a direct conflict between the decisions in that case and the original opinion here, but claim that instruction No. 16 referred to in that case had the same infirmity as the one here considered. In that case, the discussion of the instruction is found on page 694. It will be noted it is not there said that appellant was there contending that the instruction was erroneous because it invaded the province of the jury. That no such question was presented is disclosed by a consideration of that record. The opinion does say that instruction No. 16 was not erroneous, but such declaration always implies a lack of error *against the objections urged,* and not a freedom from errors not considered. Consequently the declaration has no legal or logical application to an error, though apparent, which was neither presented by appellant's brief nor considered by the court. It is the duty of this court to consider, for the purpose of reversing a judgment, such questions (and none other), as are properly presented in appellant's original brief."

In the case of *Long, Executor,* v. *Neal et al.* (1921), 191 Ind. 118, 132 N. E. 252, the court cited the Breadheft case, *supra,* in holding an almost identical instruction as the one under consideration here invaded the province of the jury. However, the court in pointing out its reasons therefor, said: "It is possible that an invasion of the province of the jury by declaring as a matter of law what ordinarily or frequently is true as matter of fact may not be reversible error. It may sometimes be obvious that the complaining party was not harmed. *Seaman* v. *Husband* (1917), 256 Pa. 571, 100 A. 941. But where the testatrix had joined her husband, in his life-time, in conveying all his real estate—

fifty-four acres—to the daughter that was 'disinherited,' and the will mentioned that fact, and the preference of a son over the other children amounted only to a few hundred dollars, at most, and the son who was thus preferred had lived near the testatrix the last six years of her life, and nightly had furnished a member of his family to sleep at her home, and the will charged him with her care and the expenses of medical attention for her through life and with her funeral expenses, we cannot know that the declaration, as a matter of law, that all of her children were the natural objects of her bounty, so that her failure to distribute her property by will as the law would have distributed it if there had been no will, could be considered as evidence bearing on the question of testamentary capacity, exerted no improper influence."

When a will is contested on the grounds the testator was of unsound mind at the time of its execution, the unnaturalness of testator's conduct is proper evidence for the consideration of the jury. The rule is well established that the provisions of a controverted will may be considered as circumstances, together with other evidence, in determining the mental condition of the testator. Under such conditions the jury may properly be instructed that it may consider the will's provisions in connection with the *natural objects* of the testator's bounty. However, the question of who is the natural object of bounty is a question to be determined from the evidence. Where the evidence discloses reasons, such as those set out in the opinions in the two cases last cited, for the testator's actions, an instruction such as the one complained of here would be an invasion of the province of the jury. It will be noted the objection of appellants to this instruction made to the trial court was not on the grounds that the instruc-

tion invaded the province of the jury. Their objection was that a testator does not have to have any reason for disinheriting a child or children, etc. In other instructions given by the court the jury was fully and properly instructed on this question. Therefore, we hold the giving of instruction No. 15 by the court was not error.

The fourteenth cause assigned in appellants' motion for a new trial alleges the trial court erred in giving appellee's tendered instruction No. 17. Their objection to this instruction was on the grounds that there was no evidence of undue influence. For the reasons hereinbefore set out, we hold there was no error in the giving of this instruction.

The remaining causes in appellants' motion for a new trial allege errors of the trial court in the admission of certain evidence. We are of the opinion the admission of the evidence complained of did not harm appellants, and therefore the ruling of the trial court admitting such evidence over appellants' objection was not error.

We believe this cause was fairly tried, and finding no reversible error the judgment of the Orange Circuit Court is affirmed.

NOTE.—Reported in 46 N. E. (2d) 718.